**FLORIDA NATIONAL BANK AT ST. PETERSBURG, as Executor of the Estate of Stella Rae Connelly, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 68–344 Civ.T.**

United States District Court,
M. D. Florida,
Tampa Division.

Sept. 19, 1969.

**1322**

Michel G. Emmanuel, Norman H. Lipoff, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., Thomas M. Harris, St. Petersburg, Fla., for plaintiff.

Thomas G. Wilson, Asst. U. S. Atty., Eugene P. Kopp, Refund Trial Section #2, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

KRENTZMAN, District Judge.

Florida National Bank at St. Petersburg, as Executor of the Estate of Stella Rae Connelly, Deceased, sues for a refund of federal estate taxes claimed to have been excessively and erroneously collected by the Internal Revenue Service. The only issue is the District Director's disallowance of charitable deductions from the decedent's gross estate in respect to a trust which provides for a life estate in income to Lucy L. Davis and the remainder to admitted charities.

Cross motions for summary judgment have been filed by Plaintiff Florida National Bank and by Defendant United States. Each motion is based upon the pleadings, depositions, affidavits and a stipulation of agreed facts.

Stella Connelly died a resident of St. Petersburg, Florida, on March 16, 1965, leaving a Last Will and Testament dated January 8, 1965, which established a trust, the income from which was payable to Lucy L. Davis for her lifetime. The remaindermen were Helen Keller Property Board, Tuscumbia, Alabama, American Foundation for Overseas Blind, Inc., New York City, and Lighthouse for the Blind, New York City.

A timely Federal Estate Tax Return was filed listing a gross estate of $810,228.20. After deductions for expenses of administration and charitable deductions, a taxable estate of $337,148.11 was reported. The tax thereon of $89,676.51 was paid with the return.

A deficiency was assessed by the District Director of Internal Revenue that denied the charitable deduction of $293,585.63 with respect to the trust. This assessment increased the estate tax by $87,458.55 plus interest of $8,460.80. Taxpayer paid the additional tax and in-

terest and filed a timely claim for refund. The claim was rejected by the District Director whereupon taxpayer brought this suit.

The principal issues presented are:

(1) Whether the Will of Stella Connelly provides a sufficiently definite standard limiting the extent of possible invasion for the benefit of the life beneficiary so that the value of the charitable remainder was "presently ascertainable" at the time of Stella Connelly's death; and if so,

(2) Whether the possibility that the charities will not receive the principal of the trust estate was so remote as to be negligible.

If both of these issues can be answered in the affirmative, taxpayer is entitled to recover as a matter of law.

The material portion of Stella Connelly's Will, which provides for invasion of the principal for the benefit of Lucy Davis, is as follows:

"If the net income from the said trust is not adequate to pay for the support and maintenance of said Lucy L. Davis, the beneficiary, such as medical, hospital, nurses' care, and any other extraordinary and necessary expenses, the Trustee shall have power to invade the principal of this trust in its absolute discretion for the purpose of making such payments  *  *  *"

The ultimate question to be determined is whether the value of the remainder interest to the charities in the residuary trust created by the Will of Stella Connelly is deductible under Section 2055 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2055. That section provides, in substance, that for purposes of the estate tax, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies and devises to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, together with all bequests, legacies and devises to trustees for such purpose, with cer-

tain provisos and other provisions not important in this case.

The Treasury Regulations, Section 20.-2055–2, entitled "Transfers not Exclusively for Charitable Purposes", outline the requirements for such a deduction. The provisions material herein are as follows:

"(a) *Remainders and Similar Interests.*

If a trust is created or property is transferred for both a charitable and private purpose, *deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable,* and hence severable from the non-charitable interest.  [Emphasis Supplied].

\*      \*      \*      \*      \*      \*

"(b) *Transfers Subject to a Condition or a Power.*

If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, *no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible.* If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable."  [Emphasis Supplied].

This Treasury Regulation has been construed to have the effect of law. Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1959).

The Government, in its Motion for Summary Judgment, has attached to said motion, various pleadings, orders and papers pertaining to a Request for Invasion of Trust Corpus filed by Lucy L. Davis in the Circuit Court of the Sixth Judicial Circuit of Florida in and for

Pinellas County on August 4, 1966, some fifteen months after decedent's death. Taxpayer has moved to strike these pleadings, orders and papers upon the ground that the issues in this case must be resolved upon the facts and circumstances as they existed upon the date of decedent's death.

■ Section 20.2055–2(b) of the Regulations previously cited clearly limits our inquiry to those facts and circumstances that were fixed or could be forecast on March 16, 1965, the date of decedent's death. The decided cases are consistent with this Regulation. Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (2d Cir. 1954); Wells Fargo Bank and Union Trust Co. v. Commissioner of Internal Revenue, 145 F.2d 132 (9th Cir. 1940). Accordingly, taxpayer's Motion to Strike has been granted.

■ The parties agree that the first issue presented to the Court is purely a question of law: Does the applicable language in Stella Connelly's Will provide a sufficiently definite standard limiting the extent of possible invasion so that the value of the charitable remainder was presently ascertainable at the time of her death?

The language of the Will and an analysis of the cases requires that this question be answered in the affirmative. The power to invade is granted only if the net income of the trust is not adequate to pay for the support and maintenance of Lucy L. Davis. The additional language relative to "medical, hospital, nurses' care and any other extraordinary and necessary expenses" merely amplifies, by way of example, the basic standard of "support and maintenance". This is an objective standard based on the needs, not the desires of the beneficiary.

■ The cases in this area fall into two general categories which produce opposing results. If the standard limiting invasion is an objective one based upon the need of the beneficiary, then it is

deemed definite and the value of the remainder held presently ascertainable; if the standard is subjective and may be influenced by the desires of the beneficiary, the opposite result obtains. Thus, the favored language is "support and maintenance", "care, maintenance and support", "maintenance and benefit", with variations on that theme. When the words "pleasure", "comfort", "desire" and "happiness" are used, however, the result is usually unfavorable to the charitable deduction. Salisbury v. United States, 377 F.2d 700 (2d Cir. 1967) furnishes an excellent review of the authorities on this point.

The Government contends that this Court's decision in Union Trust Co. v. Tomlinson, 65–1 USTC ¶ 12,282, 14 AFTR 2d 6282 (M.D.Fla.1965) aff'd 355 F.2d 40 (5th Cir. 1966) is controlling in this case.

The testator in the *Union Trust Co.* case, after establishing an objective standard for invasion, went on to say:

"It is my strong wish and desire, without limiting my Trustee's discretion herein, that at all times my Trustee's consideration shall be my wife's well-being and comfort and that my Trustee shall give sympathetic consideration to any requests that my wife may make from time to time, as I have every confidence that she will not ask for principal unless it is really required, and I, therefore, authorize and empower my Trustee to be generous in the exercise of this discretion even though there may be considerable depletion of the Trust Estate, * * *."

It is this Court's opinion that the language quoted above transformed the otherwise objective standard into a subjective standard and renders the two cases distinguishable. It is concluded, therefore, that the Will of Stella Connelly imposes an objective standard which does does not deprive the charitable remainders of being "presently ascertainable."

■ The second step of the analysis requires the Court to determine the likelihood of invasion. This necessitates a

measurement of the life beneficiary's standard of living and the capacity of her personal assets and income to sustain that standard. The determination is to be made as of the time of the decedent's death.

In the usual case this would be a question of fact preventing a decision on a Motion for Summary Judgment; however, the parties have submitted the matter to the Court on Cross Motions for Summary Judgment based upon the facts contained in the stipulation, depositions, and affidavits filed in this case.

■ Lucy Davis, the life beneficiary, was 65 years old on March 16, 1965, the date of decedent's death, and had a life expectancy of slightly more than nine years. In 1962, 1963 and 1964, prior to the time she began working full-time for the decedent, Lucy Davis was drawing Social Security of approximately $68 a month. Her income prior to 1964 was less than $1,200 a year. This income was derived from her part-time job at an ice cream store and various nursing jobs. Approximately a year before decedent's death, Lucy Davis gave up her job at the ice cream store and became a full-time nurse-companion to decedent. For this she was compensated at the rate of $50 a week. In 1964, Lucy Davis earned $1,-916. Except for a home which she purchased in 1959, the payments on which were $75 per month, Lucy Davis owned no real or personal property of value. Her habits were those of a thrifty, frugal person.

On the date of decedent's death, Lucy Davis was in good health and had never been seriously ill. She owned a hospital and surgical expense policy and two hospital room expense policies. These policies, besides providing for doctors' fees, also provided reimbursement for hospital room expenses up to $22 a day and other specified expenses resulting from accidental bodily injury, sickness or childbirth. Upon decedent's death, Lucy Davis became the owner of a $5,000 trust account in the Florida National Bank at St. Petersburg. She also received decedent's home and furnishings in St. Petersburg valued at $12,500. Finally, Lucy Davis became the income beneficiary, for her lifetime, of a trust created by Stella Connelly in paragraph "Seventh" of her Will.

Stella Connelly left a total gross estate of $810,228.20. After paying the expenses of administration, legacies and federal estate taxes, the balance available to be distributed to the trust was $477,346.36. In the normal course of events the trust assets may reasonably be predicted to return 4½%. This would produce an annual income for Lucy Davis' benefit of $21,480.60, more than 11 times the income she received and lived on during the year prior to Stella Connelly's death.

On these stipulated and undisputed facts, the likelihood of invasion is remote. It is unlikely that it will be necessary or that the trustee will ever deem it advisable to invade the corpus of the trust.

There was no genuine issue of material fact and for the reasons given the taxpayer was entitled to judgment as a matter of law. Orders and judgments consistent with the foregoing granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment have previously been entered by the Court.