**PEOPLES TRUST COMPANY OF BERGEN COUNTY, Executor of the Estate of Dora Plume, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 947-67.

United States District Court,
D. New Jersey,
Law Division.

Feb. 19, 1970.

Riker, ·Danzig, Scherer & Brown, by Marie L. Garibaldi, Newark, N. J., for plaintiff.

Frederick B. Lacey, U. S. Atty., Newark, N. J., Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson, Stephen T. Lyons, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

COOLAHAN, District Judge.

This is a suit for an estate tax refund of $55,007.51 plus statutory interest. The case is currently before the court on defendant's motion for summary judgment. The sole question involved here is whether a certain inter-vivos trust set up by Mrs. Dora Plume may be taken as a charitable deduction or not.

On September 9, 1960, Mrs. Plume set up a trust in which the income was to be paid to her for life, then to her husband, Leslie Plume, for life, then to her daughter, Vivian Plume, for life. After the death of all three beneficiaries, the principal was to be paid to certain named institutions which, it is stipulated, qualify under the estate tax laws as charitable institutions. Paragraph 9 of the trust provided that:

> Capital gains dividends derived from mutual fund investments shall be considered to be income and shall be paid to the then income beneficiary in the same manner as general income of the Trust Estate.

On the same date, Leslie Plume set up an inter-vivos trust in which the income of the trust was to go to him for life, then to Mrs. Plume, and then to Vivian Plume. After the death of the last beneficiary, the principal was to be paid to the same institutions as the principal from the Dora Plume trust. The wills of Mr. and Mrs. Plume provided that their residuary estate should pour over into these inter-vivos trusts. Dora Plume died on May 5, 1964, having been predeceased by Vivian Plume. Leslie Plume was confined to a Nursing Home from April 24, 1964, when his wife entered a hospital, through his death on June 13, 1966, at the age of 87. On the federal estate tax return of the Dora

Plume estate, a charitable deduction of $273,331.99 was taken; the Internal Revenue Service denied the total amount of the charitable deduction and on November 3, 1965, assessed a deficiency in estate tax of $54,207.03, plus interest of $800.48, resulting solely from the disallowance of the charitable deduction. The tax assessment was paid on November 3, 1965; the interest thereon was paid on December 8, 1965. An original claim for refund was filed by plaintiff on February 8, 1966, and a second claim for refund, identical in substance with the first, was filed on February 23, 1966. This suit was begun on September 13, 1967.

■ Defendant first urges that the amount of the trust is not deductible because of the provision that capital gains dividends from mutual funds are considered to be, and are distributed as, income. Under Rev.Rul. 60–385, 1960–2 Cum.Bull. 77, if a "contribution or gift" was made after January 1, 1961, a charitable interest is not deductible if it provides that such capital gains income be treated as income. If the "contribution or gift" here is deemed made prior to January 1, 1961, then it is governed by Rev.Rul. 55–120, 1955 Cum.Bull. 56, which provides that a charitable deduction is proper irrespective of whether the capital gains are distributed as income or added to the corpus. The initial question, therefore, is whether the "contribution or gift" here was made prior to January 1, 1961. Plaintiff contends that, because the trust was first created on September 9, 1960, the "contribution or gift" should be governed by Rev.Rul. 55–120. However, the trust instrument provides that the settlor may at any time during her lifetime "amend or revoke this trust in whole or in part by an instrument in writing." It appears, therefore, that the contribution involved here did not become fully effective and irrevocable until the settlor's death in 1964, and hence that Rev.Rul. 60–385 is applicable.

Plaintiff next argues that Rev.Rul. 60–385 should not be followed, as outside the scope of Treas.Reg. 20.2055–2(a), which requires only that the interest be severable and presently ascertainable in order to be deductible. Rev.Rul. 60–385 reasons that the interest is "not ascertainable" by reason of the possibility of invasion of the corpus when capital gains are considered and distributed as income.

■ As the Court of Appeals for the Third Circuit held in Aluminum Co. of America v. United States, 123 F.2d 615 (3d Cir. 1941), with regard to revenue rulings:

> The opinions of general counsel for the Bureau of Internal Revenue * * * were merely advisory. In no sense did they constitute rules or regulations having the force of statutes.

See also United States v. Bennett, 186 F.2d 407 (5th Cir. 1951). The revenue ruling here in issue, therefore, need be followed only if it persuade the court that its conclusion is correct. In this instance, the ruling is not persuasive. In its brief, the defendant cites a series of hypothetical transactions which, were they to occur, would diminish the amount of the corpus going to the charitable remainderman to $36,000 after six months. This example, the court notes, is, as a factual matter, extremely unrealistic in the very large turnover it assumes, as well as in the great fluctuations postulated. Nothing submitted by the defendant in this case lends any factual support to the assumptions of the example. An even more important objection to the hypothetical example posed, is that the trustee owes equal duty, under the law of New Jersey which controls its actions, to the life beneficiary and to the charitable remainderman. See, e. g., In re Koretsky, 8 N.J. 506, 86 A.2d 238 (1951); Cohen v. First Camden National Bank and Trust Co., 51 N.J. 11, 237 A.2d 257 (1967). No court in New Jersey would permit the trustee to so use its power to deplete the trust corpus in order to benefit the life beneficiary. See also Bankers Trust Co. v. United States, 308 F.

**1200**

Supp. 545 (S.D.N.Y.1970), where, in an analogous case, the court held that the trustee's power to invest in "wasting assets," under which the life beneficiary would receive current income while the charitable remainder was diminished,

is not an indirect power of invasion because it is limited by the testator's obvious intention of granting the remainder to charity and by New York law which requires a trustee to act for the benefit of the remaindermen.

The contention of the defendant in the instant suit has been raised several times previously before other courts, which have consistently found against the defendant. As the court said in Miami Beach First National Bank v. United States, 69–2 U.S.Tax Cas. ¶12,627 (S.D.Fla.1969):

The reason for the requirement of ascertainability is that the estate is seeking a deduction for a charitable remainder which will be received in the future. To obtain that deduction, the tax laws require that the charity receive at least the amount which is deducted. This minimum contribution to charity must be fixed so that *barring the general uncertainty which attends human affairs*, the charity will receive at least that amount at a future date. * * * Capital gains are traditionally considered an increment to principal rather than an increment to income, but it cannot be disputed that capital gains are an increment. For the purposes of the estate tax charitable deduction, once the bare minimum distribution to charity is assured, it does not matter where the increment goes. (Emphasis added.)

See also Estate of Lillie MacMunn Stewart, 52 T.C. 830 (1969); Gardiner v. United States, 69–2 U.S.Tax Cas. ¶12,628 (D.Ariz.1969); Florida National Bank at St. Petersburg v. United States, 310 F.Supp. 1321 (M.D.Fla. 1969). Here, the trustee's duty to the charitable beneficiary negates the notion that any invasion of corpus, as foreseen by the defendant, could occur.

Since the amount going to the charity is sufficiently ascertainable, this provision of the trust should not impede the deduction of the amount of the trust from the gross estate under 26 U.S.C. § 2055.

■ The sole remaining question is whether a charitable deduction may not be taken because of the trust provision that:

Upon the death of the Settlor, the Trustee shall pay to the Settlor's husband, Leslie J. Plume, all of the net income of the trust estate in convenient installments, and shall pay to him, or for his benefit, such part or parts or all of the principal of the Trust Estate as it shall judge to be necessary in its discretion to provide adequately for the said husband of the Settlor and for his support, maintenance, health and needs.

The government contends that this provision runs afoul of Treas.Reg. 20.2055–2(a), which requires that the charitable interest be severable, and of Treas.Reg. 20.2055–2(b), which requires that the possibility that the charitable transfer will not become effective be "so remote as to be negligible." In order for the provision to be sustained as deductible, therefore, two conditions must be met: 1) the trust must contain a definite and ascertainable standard governing the trustee's discretion in exercising its power to invade the corpus; and 2) the taxpayer must demonstrate that, in view of the express standard limiting the power, the chance of invading the corpus is so remote as to be negligible.

With respect to the first condition, there does not appear to be any dispute that the standard with regard to "support, maintenance, [and] health" is sufficiently definite and ascertainable. The government argues, however, that "needs" is so broad as to be unascertainable, and so that the deduction cannot be sustained. Both parties agree that the law of the State of New Jersey controls in the construction of the terms of the trust instrument. The definition of "needs" in New Jersey has been set

forth by the Third Circuit Court of Appeals in Funk v. Commissioner of Internal Revenue, 185 F.2d 127 (3d Cir. 1950), as follows:

> The term "needs" is not, of course, one the content of which can be defined precisely. * * * While obviously it must include the essentials of life, it has been construed in New Jersey to mean *that which is reasonably necessary to maintain a beneficiary's station in life*. It is not indicative of an unqualified gift, nor is it dependent upon the fancy of the administrator. Thus, its use confined the trustee to limits objectively determinable * * *. (Emphasis added.)

As the government admits in its brief that, under Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), for a standard to be sufficiently ascertainable it must only relate to "the beneficiary's standard of living prior to the decedent's death," and, by the law of New Jersey, the word "needs" refers to Mr. Plume's standard of living at that time, it may readily be observed that the standard in the trust instrument is ascertainable, and sufficiently limits the trustee's discretion in exercising the power to invade the corpus of the trust.

 It is also readily apparent from the circumstances in this case that the chance of the corpus being invaded, using this standard, was so remote as to be negligible on the date of Mrs. Plume's death. From the uncontroverted affidavits filed by plaintiff, it clearly appears that the Plumes lived a very modest life and spent little on their own wants, as shown by the fact that they expended only $4,219.00 in living expenses during 1963. At the time of Mrs. Plume's death, the relevant time for the determination required here, Mr. Plume was 85 years old and was about to enter a nursing home. He had a large amount of cash in various bank accounts, totalling over $55,000. The stipulation between the parties specifies that his expenses in the nursing home during the period from May 5, 1964 until his death on June 13, 1966, amounted to under $22,000. During this period of time, the income from the Leslie Plume trust amounted to over $23,000, and the income from the Dora Plume trust amounted to more than $15,000. The law of New Jersey is very clear that

> Where the life tenant is given the income of the trust, with a further provision authorizing the trustee to invade corpus if necessary for the life tenant's support, the separate income of the life tenant must be considered in determining whether it is necessary to invade corpus. Stetson v. Community Chest, 24 N.J.Super. 243, 93 A.2d 796 (Ch.Div.1952).

Sibson v. First National Bank and Trust Co. of Paulsboro, 64 N.J.Super. 225, 165 A.2d 800 (App.Div.1960). Even with the high cost of the nursing home, which was more than twice the average living expenses of both Mr. and Mrs. Plume, Mr. Plume's income from the two trusts, and his cash assets, were more than adequate to cover his expenses. It was clear in 1964 when Mrs. Plume died that such would be the case and it appears, therefore, that the possibility that the corpus would be invaded was so remote as to be negligible, within the meaning of Treas.Reg. 20.2055–2(b).

 While this action is before the court on defendant's motion for summary judgment, it is proper for the court to enter summary judgment in favor of the nonmoving party on its own motion. American Auto Ins. Co. v. Indemnity Ins. Co., 108 F.Supp. 221 (E.D.Pa.1952), aff'd. 228 F.2d 622 (3d Cir. 1956); Local 33, International Hod Carriers etc. v. Mason Tenders District Council, 291 F. 2d 496 (2d Cir. 1961). In view of the court's findings above, summary judgment in favor of the plaintiff is appropriate and should be granted.

Let an appropriate order be submitted.