**Carl J. MAROLD, Executor of the Estate of Ralph D. Waterman, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 1188–68.**

United States District Court, D. New Jersey.

July 14, 1970.

Pitney, Hardin & Kipp by Joel A. Wolff, Newark, N. J., for plaintiff.

Frederick B. Lacey, U. S. Atty. by Thomas R. Wechter, Atty., Dept. of Justice, for the Government.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### OPINION

WHIPPLE, District Judge:

This suit is presently before the court on cross motions for summary judgment. The action was brought for the refund of federal estate taxes paid in the amount of $23,532.88 plus statutory interest. Jurisdiction is predicated on 28 U.S.C. § 1346(a) (1).[1]

Many of the facts involved in this litigation have been stipulated and can be set forth as follows:[2] Ralph D. Waterman died testate on March 28, 1962 and Letters Testamentary were issued to his widow, Blanche G. Waterman. On July 15, 1966 the plaintiff was appointed executor, succeeding Blanche G. Waterman. Pursuant to the decedent's will the residue of his estate was left in trust. The plaintiff and Blanche G. Waterman were named co-trustees, with the plaintiff now being the sole surviving trustee, and being unrelated to any beneficiaries of the trust. The dispositive provisions of the trust require the net income to be paid to Blanche G. Waterman for her life and upon her death to be paid to Isabella G. Robbins, decedent's sister-in-law for her life, who at the time of decedent's death were 70 and 73 years of age respectively. Upon the death of the survivor of the two life tenants, the remainder of the trust property is to be distributed as follows: $101,000. to nine named individuals, if then living; (2) $85,000. to eight named charitable institutions; and (3) the balance of the trust, including lapsed legacies under (1) above, to three charitable institutions, namely, Massachusetts In-

---

1. This provision provides as follows: (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of: (1) any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws.

2. Two stipulations have been filed with the court. The first, entitled "Stipulation of Facts," was filed on August 29, 1969. The second, entitled "Stipulation of Additional Facts," was filed on April 1, 1970.

stitute of Technology (50%), Cottey College of Nevada, Missouri (30%) and the First Presbyterian Church of Perth Amboy, New Jersey (20%). The charitable institutions referred to in (2) and (3) above are all organizations described in section 2055(a) of the Internal Revenue Code of 1954, gifts and bequests to which qualify for the estate tax charitable deduction. The value of the residue of decedent's estate was $229,000. If all of the individual beneficiaries had survived the two life tenants, (four of them entitled to $66,000. have already died) $101,000. would have been used for such bequests, leaving a balance of $128,000. to satisfy the specific charitable bequests of $85,000., with the balance remaining for the ultimate charitable residuary bequests. The value at the time of decedent's death of the interest passing to the charitable organizations, which is the amount claimed by the plaintiff as a charitable deduction and the amount disallowed by the Commissioner, was $87,804.09.

In order to understand why the Commissioner disallowed the charitable deduction, reference must first be made to section 2055 of the Internal Revenue Code of 1954 (§ 2055) and the corresponding Treasury Regulations on Estate Tax § 20.2055 (§ 20.2055). Section 2055 provides in pertinent part as follows:

"For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

\*        \*        \*        \*        \*        \*

(2) [T]o or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation."

The corresponding sections of the estate tax regulations clarify the above provisions. See Treasury Regulations on Estate Tax § 20.2055–2(a) and (b).

Summarily, § 2055 provides for the deduction from a decedent's gross estate of the value of any bequest to or for the use of a charitable organization. Section 20.2055 interprets the above section to allow a deduction from a decedent's estate of the value of a charitable remainder interest if it is "presently ascertainable" at the time of the decedent's death and the possibility that the charity will not take it is "so remote as to be negligible."

It has been stipulated that the provisions governing the trust give the trustees no power to invade the corpus of the trust for the benefit of the life beneficiaries. From this the plaintiff contends that the trust instrument provides that only income can be distributed to the life beneficiaries and that, except for the specific bequests, the principal should go to charity. On the other hand, the Commissioner has asserted that the existence of certain discretionary administrative powers given to the trustees make the value of the interest passing to the charitable organizations presently unascertainable within the meaning of § 20.2055 and thus, not deductible.

The powers which the defendant refers to are contained in the Thirteenth and Fourteenth Articles of the trust instrument. These provisions state:

"THIRTEENTH: Always bearing in mind, with respect to assets allocated to and from time to time held in trust under Article THIRD of this will, my intention that by said wife, Blanche Grieve

Waterman, shall receive and enjoy during her life such a periodical distributable income from productive trust property as is consistent with the value of the property held in trust under Article THIRD and with its preservation, my Trustees, in addition to and not in limitation of all common law and statutory authority, shall have the following powers, privileges and duties with respect to the property held in trust under both Article THIRD and Article FOURTH of this will, or any part hereof:

(a) The Trustees shall have the care, custody, and possession of the trust property and collect the income thereon.

(b) The Trustees shall have full power to make or change investments as they, in their own uncontrolled discretion, may see fit and to purchase and to continue to hold investments even though of a kind not usually considered suitable for trust investments, or even though a larger proportion of the entire trust property is thereby retained in one investment or one type of investment than otherwise might be considered suitable or prudent in the investment of trust property or combines two or more of such objections; to invest in shares or securities of unincorporated or voluntary associations or investment trusts; to invest or re-invest any portion or portions of the trust property coming into their hands to be held by them as they, in their sole uncontrolled discretion, shall deem advisable and for the best interests of the trust, and to that end at any time or times to sell at public or private sale or to mortgage or pledge stocks, bonds, securities, and real or personal estate of the said trust of every kind and nature without the necessity of securing any license or authority from any court so to do, and to invest the proceeds in such securities, loans, mortgages, or other real or personal property as they shall deem advisable; to sell or exercise subscription rights attaching to any securities held by them and to borrow money for that purpose; to convert personal property into real property and the reverse whenever they may think it advisable; to exchange any real estate for other real estate and to convey the same in fee or for any less estate; to execute, acknowledge and deliver all deeds, instruments, or writings necessary or convenient to transfer proper title thereto; and no purchaser, mortgagee, or pledgee from said Trustees shall be bound to look to the application of the purchase money or to the proceeds of any pledge or mortgage, and the receipt of any trustee shall exonerate the person taking the same from any liability to look to the application of the purchase money or to the proceeds of any pledge or mortgage.

(c) The Trustees shall have full power to compromise or compound any debts owing to them or owed by them as such Trustees or any other claims, and to adjust any dispute in relation to debts or claims by arbitration or otherwise, and to pay any debts or claims against them as such Trustees upon any evidence that to them shall seem sufficient.

(d) The Trustees shall have full power to pay taxes and assessments, provide for insurance, make repairs, set aside from and deduct from the net income and withhold and add to principal such sums for amortization, pay such broker's commissions, employ such agents and counsel and generally to do all such acts and incur and pay all such expenses in the management of the trust property as they in their own uncontrolled discretion may deem wise, prudent and advantageous for the best interest of the trust.

(e) The Trustees shall have full power to determine what shall be charged or credited to income and what to principal in any manner which shall fairly and equitably reflect a proper allocation between principal and income. If they shall hold or at any time acquire any investments which are of the character of a wasting security or the actual value of which may be at a premium above their par value, I authorize them in their uncontrolled discretion to treat the whole or any part of the income accruing therefrom as income for the purposes of the trust without any obligation to pro-

vide by sinking fund or otherwise for a diminution in actual value. I also give my Trustees full power and authority to become a party to any reorganization or protective agreement affecting any of the securities held by them and to deposit or exchange the securities to which the reorganization or protective plan relates in accordance with such agreement, and in general to act with any of the securities in their charge for the protection thereof as fully as they would be entitled to act for their own property.

(f) The Trustees shall have full power in their uncontrolled discretion to employ investment counsel and to consult with such counsel relative to any matter or thing whatsoever pertaining in any way to the retention, sale, purchase, investment, or reinvestment of any securities or other property constituting the property in their hands or any part thereof or otherwise pertaining to the management or administration of said property, and to determine in their discretion whether or not to act upon the recommendation of such investment counsel; to pay such investment counsel, if employed, such compensation as said Trustees shall deem reasonable and such payment shall be independent of and in addition to the compensation to which such Trustees are entitled.

(g) I give to my Trustees power conclusively to determine the value of any securities or other property for the purposes of making a fair division thereof between the persons entitled thereto, and to pay or set apart distributive shares of the principal of the trust property whenever the same may be payable or divided either in cash or securities or other property in their sole discretion, and to select the particular securities or other property which shall be distributed to any and all beneficiaries or set apart in any particular share.

(h) The Trustees may allow any property, real or personal, at any time subject to any of the trusts herein expressed to stand in their names, and they may allow, also, the said property or any part thereof to stand in the name of any other person or persons or of any corporation without any indication of any trust, subject to any agreement or agreements they may see fit to make in regard thereto.

FOURTEENTH: My Trustees, in addition to and not in limitation of all common law and statutory authority, shall have the following powers, privileges and duties with respect only to the property held in trust under Article FOURTH of this will.

(a) The Trustees may purchase or continue to hold property which is unproductive of income without making any allowance to the life tenants by reason of the failure to change such investments to one productive of income, and without making any allowance from future proceeds of the property, whether from income or principal, to compensate those who are life tenants during such unproductive period.

(b) The Trustees shall have full power conclusively to determine what is principal and what is income of the property held by them as such Trustees and what expenses shall be charged to income and what expenses to principal, and their determination shall be conclusive, whether or not, in the absence of this authority, it would be in accordance with the law.

(c) The Trustees shall have full power to set aside from and deduct from the net income and withhold and add to principal such sums for taxes, assessments, insurance, repairs or depreciation as they in their own uncontrolled discretion may deem wise, prudent, and advantageous for the best interests of the trust, and indemnify, exonerate and reimburse themselves from the trust property for any disbursement made or expense incurred in connection with the foregoing.

(d) The Trustees shall have full authority to pay the compensation due any counsel, investment counsel, or other agent or advisor employed by the Trustees out of either principal or income or partly out of either as the Trustees in

their own uncontrolled discretion may determine.

(e) The Trustees shall be empowered to abandon any property, real or personal, which they consider not worthy of retention and maintenance.

(f) The Trustee may loan money upon such terms and conditions as he shall determine to any individual who is then a beneficiary of the trust estate or who might on any contingency thereafter become such beneficiary."

The plaintiff further contends that even in view of the powers provided for above, the corpus of the trust cannot be diverted from the charitable to the non-charitable beneficiaries unless the trustee exercises his discretionary administrative powers in such a manner as to commit a flagrant breach of his fiduciary obligations, a result which is prevented by the law of New Jersey which governs this testamentary trust.

The court has pointed out, supra, that with respect to the transfer of a remainder interest to a charitable institution where there is an intervening life estate, § 20.2055 sets forth the so-called ascertainability requirement upon which the Commissioner relies. The purpose of that requirement is to attempt to insure that the charitable remainder interest will receive at least the amount of the charitable deduction. Miami Beach First Nat'l Bank v. United States, 69–1 T.C. para. 12,627 (S.D.Fla.1969), on appeal to 5th Cir. Consequently, pursuant to § 20.2055, a power which is not limited by an ascertainable standard results in the loss of the charitable deduction. However, this court is of the opinion that the existence of discretionary administrative powers present in the case at bar is not the equivalent of an unlimited power of invasion and does not render a charitable remainder interest non-deductible. Federal courts throughout the country have consistently so held. See Peoples Trust Co. of Bergen County v. United States, 311 F.Supp. 1197 (D. N.J.1970) on appeal to 3d Cir.; Bankers Trust Co. v. United States, 308 F.Supp. 545 (S.D.N.Y.1970); Gardiner v. United States, 69–2 U.S.T.C. para. 12,628 (D. Ariz.1969), on appeal to 9th Cir.; Miami Beach First Nat'l Bank v. United States, supra; Estate of Phyllis W. McGillicuddy, 54 T.C. 315 (1970); Estate of Lillie MacMunn Stewart, 52 T.C. 830 (1969), on appeal to 3d Cir.

Furthermore, it is clear that in New Jersey the trustee of a trust having both life beneficiaries and remaindermen cannot exercise his discretionary investment powers in such a manner so as to favor the life beneficiaries at the expense of the remaindermen or vice-versa. Clearly his duty is to administer the trust with due regard to the respective interests of the successive beneficiaries. See Cohen v. First Camden Nat'l Bank & Trust Co., 51 N.J. 11, 237 A.2d 257 (1967); In re Koretsky, 8 N.J. 506, 86 A.2d 238 (1951); Pennsylvania Co. for Insurance on Lives and Granting Annuities v. Gillmore, 137 N.J.Eq. 51, 43 A.2d 667 (Ch.1945). Judge Coolahan's opinion in *Peoples Trust Co.*, supra, is illuminating on this point. There also, the United States was concerned about the trustee using its power to invade the corpus to the detriment of a charitable remainder. However, in light of the principles of law referred to above, the court concluded that " * * * the trustee's duty to the charitable beneficiary negates the notion that any invasion of corpus, as foreseen by the defendant, could occur * * *." This court has reached the same conclusion.

Additionally, as the plaintiff has pointed out, it cannot be assumed that the trustee will exercise his powers in breach of his fiduciary responsibility. It must be assumed that since it is required under the law of New Jersey, he will exercise his powers in a way which will not favor the life beneficiary over the remaindermen. If he did so exercise his powers, the remaindermen or the Attorney General, acting on their behalf, could prevent such action and compel the trustee to discharge his fiduciary duty to preserve the charitable remainders.

Accordingly, the plaintiff's motion for summary judgment is granted and the

defendant's cross motion for summary judgment is denied. Counsel for the plaintiff shall submit an appropriate order in conformity with the foregoing.