6

## The Merchants Bank v. Evelyn M. Bouchard

[568 A.2d 412]

No. 87-018

Present: Peck and Dooley, JJ., and Keyser, J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed October 20, 1989

*Thomas F. Heilmann, P.C.*, Burlington, for Plaintiff-Appellee.

*Edwin H. Amidon, Jr.*, Burlington, for Defendant-Appellant.

**Peck, J.** Defendant mortgagor appeals from a superior court foreclosure decree in favor of plaintiff bank. We affirm.

Prior to the events that gave rise to this action, Evelyn Bouchard and her husband Robert owned and operated the Regal Optical Company as a successful business enterprise. In 1968, on the advice of their attorney, they established three revocable trusts for tax purposes, including the Evelyn M. Bouchard Trust. The trial court specifically found that: "[A]t all

times, the Bouchards were and are in good physical and mental health and are competent to handle and manage their affairs. These trusts were created purely for financial purposes aimed at saving tax dollars." The Farmers Trust Company (now the Merchants Trust Company) was appointed trustee of all three trusts.[1]

In 1973, the Bouchards sold the assets of the Regal Optical Company to James Wood and George Chase, who then operated the business as Regal Optical, Inc. (Regal). The Bouchards accepted payments primarily in the form of promissory notes, which were later converted into preferred stock when the business ran into financial difficulties.

Chase left the business, and when Wood wanted to expand operations, the Bouchards, who were junior creditors and financially vulnerable, decided to assist him in obtaining new financing by granting a mortgage to plaintiff bank on property the Evelyn Bouchard Trust owned on Baldwin Street in South Burlington, which Regal rented from the trust. Dudley Davis, president of plaintiff bank and a board member of Merchants Trust Company, a subsidiary of plaintiff bank, testified that he tried to dissuade Robert Bouchard from agreeing to secure the loan because it was not a "reasonable business man's risk." Nevertheless, the Bouchards elected to proceed with the transaction. Though the Baldwin Street property had a value of some $375,000, Robert Bouchard initially sought to limit the amount of the mortgage to $100,000, but the loan was not acceptable to plaintiff on such terms. When the Bouchards' attorney prepared the mortgage deed, it contained no reference to any dollar limit on the amount of the mortgage.

On January 21, 1981, Regal and Wood executed two notes in favor of plaintiff bank totaling $405,000, and Farmers Trust Company, as trustee of the Evelyn Bouchard Trust, executed a

---

[1] While the trial court treated the Evelyn M. Bouchard Trust as the defendant, the complaint, filed on or about March 8, 1985, denominated the defendant as "Evelyn M. Bouchard, Trustee Under A Trust Created By Evelyn M. Bouchard." That denomination reflects a quitclaim deed from the Merchants Trust Company to Evelyn M. Bouchard as such trustee on or about January 10, 1985, well after the events at issue and shortly before commencement of the present suit.

mortgage deed in favor of the bank. In connection with the transaction, the Bouchards wrote a letter at the request of Susan Moses, a trust officer of the Farmers Trust Company, stating in part:

> The purpose of this letter is to exculpate the Farmers Trust Company in its capacity as Trustee of a trust fund for the benefit of Evelyn Bouchard of any and all liability which may result from its execution and delivery of a mortgage to The Merchants Bank on real estate owned by the Trust. Under our direction said mortgage has been executed by The Farmers Trust Company as Trustee in the principal sum of $405,000, representing two notes, one of $110,000, the other of $295,000, executed by Regal Optical, Inc., to secure loans by the Merchants Bank to Regal Optical, Inc.

On the closing date, the mortgage forms prepared by the Bouchards' attorney were taken to plaintiff bank and filled in with the amounts to be secured. Susan Moses signed the mortgage deed on behalf of Farmers Trust Company as trustee of the Evelyn Bouchard Trust. The deed was taken out to the reception area, where Wilma Horton, an employee of Farmers Trust, signed as a witness, and finally brought to another office where Dudley Davis signed as a second witness and as a notary public. The trial court found that both Horton and Davis knew Ms. Moses' signature and recognized it when they signed the mortgage deed.

Funds were disbursed to Regal some time in January or February, 1981, and Regal defaulted on its obligations to plaintiff during the latter part of 1982. The present foreclosure action ensued, and in response to a claim that the grantor's signature on the mortgage deed was improperly witnessed as required by 27 V.S.A. § 341, the trial court concluded that under § 342[2] "the

---

[2] 27 V.S.A. § 342 states:

*Acknowledgement and recording required*

A deed of bargain and sale, a mortgage or other conveyance of land in fee simple or for term of life, or a lease for more than one year from the making thereof shall not be effectual to hold such lands against any person but the grantor and his heirs, unless the deed or other conveyance is acknowledged and recorded as provided in this chapter.

acknowledging and witnessing requirements of 27 V.S.A. § 341 are not applicable where the party against whom the mortgage is sought to be asserted is the grantor of the mortgage." The present appeal followed.

## I.

Defendant asserts that the trial court misunderstood the nature of the trust relationship between the Farmers Trust Company and the Evelyn Bouchard Trust, and assigned too narrow a duty to the trustee to avoid improper self-dealing. Defendant errs in two respects: first, in overstating the nature and extent of the trustee's powers over and duties under the Evelyn Bouchard Trust; and second, in understating the scope and clarity of the "exculpatory letter" sought by the trustee and given by the Bouchards. Findings 15 and 16 establish the nature and extent of the relationship between Farmers Trust Company and each of the Bouchard trusts:

> The role of the Farmers Trust Company in administering the Bouchard Trusts was essentially ministerial. The Bouchards made virtually all the investment decisions without the input or advice of the Farmers Trust Company. Most of the trusts' assets, particularly in the case of the Evelyn Bouchard Trust, were actively managed by Robert Bouchard. . . .

> Several trust officers administered the Bouchard account in succession. None of them was ever asked by the Bouchards to make investment judgments or give financial advice. Indeed, concerning the situation which involved the Baldwin Street property being pledged to secure the debt to Regal, the Bouchards never sought the advice of the Farmers Trust Company as to the wisdom or prudence of the investment decision or the prudence of pledging the property.

The measure of a trustee's duty can be limited by the original understanding of the settlor and trustee at the time the trust was established. See *Renz v. Beeman*, 589 F.2d 735, 744 (2d Cir. 1978); *Central Hanover Bank & Trust Co. v. Russell*, 290 N.Y. 593, 594, 48 N.E.2d 704, 704 (1943). Here, the trust was a vehi-

cle for the Bouchards' tax planning, and they at all times retained complete control over its administration. The claims of self-dealing rest on the assumption that Farmers Trust had the power to act in its self-interest by assigning trust assets as collateral to secure a loan made by its parent company. However, the findings plainly show that it was the Bouchards who decided to pledge the Baldwin Street property to secure the loan to Regal, that plaintiff's president advised against the transaction, and that a Farmers Trust officer asked the Bouchards to sign a letter which put them on notice unequivocally that the risks of the transaction would be theirs, not Farmers'.

The cases cited by defendant deal with fiduciaries who were in trust relationships with potential for self-dealing. In *Vredenburgh v. Jones*, 349 A.2d 22 (Del. 1975), an executor purchased shares of a mine which belonged to the estate he was administering. Though he obtained the beneficiaries' consent, the court concluded that he violated his duty of trust, because his disclosure of facts—all within his control—was inadequate. In the present case, it was the Bouchards who controlled every aspect of the mortgage transaction, while, as the court determined, plaintiff and Farmers Trust had ministerial roles. In *Cohen v. First Camden National Bank & Trust Co.*, 51 N.J. 11, 237 A.2d 257 (1967), the bank trustee allowed its commercial division to assign the assets of a trust within the trustee's control as collateral for loans to the beneficiary's second husband without explaining the implications of the transaction to the beneficiary. As in *Vredenburgh* the bank had meaningful and significant powers and a high duty of disclosure to its beneficiary, neither of which factors are present in the instant case.

Closer in point is *Bank of Illinois in Mount Vernon v. Bank of Illinois in Mount Vernon*, 13 Ill. App. 3d 711, 300 N.E.2d 507 (1973), where, as here, the beneficiary of a trust ordered trust property mortgaged to secure a loan by the bank. The court allowed foreclosure and rejected the claim of self-dealing since the beneficiary had exercised the real power over the trust.

## II.

Defendant next argues that the court erred in placing the

burden of proof on it to demonstrate that "any action by the Farmers Trust Company or the Merchants Bank was unfair or unreasonable to them." The underlying basis for this argument is that plaintiff and Farmers Trust were fiduciaries who were in a position to benefit from self-dealing and who should be held to a very high standard of proof that "the transaction to which the beneficiary consented involved a bargain which was not fair and reasonable." Restatement (Second) of Trusts § 216(3) (1959). Defendant's specific complaint is that the mortgage transaction was unfair because it resulted in a high-profit loan by the bank with virtually no risk.

We concluded earlier that plaintiff and its subsidiary trust company acted at the Bouchards' direction and under their control, and were not subject to the duties of a fiduciary with power and discretion over the trust corpus. Consequently, defendant's attempt to impose an affirmative duty on the plaintiff to demonstrate the fairness of the mortgage transaction is unavailing. In the context of a normal commercial relationship between a lender and a mortgagor, neither the lender's profit nor risk in the transaction is relevant to whether the lender may foreclose its mortgage.

### III.

Relying on *Day v. Adams*, 42 Vt. 510, 515 (1869), defendant argues that the mortgage deed was invalid because it was not properly attested under 27 V.S.A. § 341, since witnesses Horton and Davis did not observe Susan Moses affix her signature to the instrument, and since mere familiarity with Moses' signature did not suffice to meet the requirements of the statute. *Day* is based on a different set of facts, and is inapposite here. The case involved the conflicting rights of the initial grantee and a subsequent purchaser under a defectively witnessed deed. *Day* holds that two subscribing witnesses are required for a valid deed, not that a grantor may rely on the absence of properly attesting witnesses to disavow the instrument. While this is not a classic grantor/grantee situation, we hold today that a grantor is estopped to assert title against a grantee because of improper attestation of the grant instru-

ment, where the grantor's acknowledgement is taken in proper form under 27 V.S.A. § 342. See *Allgood v. Allgood*, 230 Ga. 312, 313, 196 S.E.2d 888, 889 (1973); *Turner v. May*, 202 Misc. 320, 323, 117 N.Y.S.2d 778, 781 (Sup. Ct. 1952). As between the grantee and a subsequent bona fide purchaser, it is fair to burden the former with responsibility for defects in title arising out of imperfections in the original conveyance. It would be wholly inequitable, however, to allow a grantor to place itself in the superior position of a subsequent purchaser when it was party to the imperfection. There was no error in sustaining the mortgage deed against defendant's claim of faulty attestation.

*Affirmed.*