In the Matter of the Estate of HARRY D. GOULD, Deceased. GERALD F. GOULD, JR., Appellant; ORANGE COUNTY TRUST COMPANY et al., Respondents.

Third Department, December 6, 1962.

*Andromidas & Pratt (George C. Pratt* of counsel), for appellant.

*Elbert N. Oakes* for respondents.

HERLIHY, J. Appellant petitioned the Surrogate's Court for revocation of letters of trusteeship granted the respondents, Orange County Trust Company and Walter E. Deisseroth, and for an order prohibiting the transfer of certain shares of stock which comprised the corpus of the trust.

The Surrogate dismissed the petition for failure of proof and refused to remove the trustees. He made no finding as to the validity of the agreement of sale, which is fundamental and the real issue on this appeal.

The trust was created by the last will and testament of Harry D. Gould for the sole benefit of the petitioner herein, as follows: '' All of my shares of stock in H. D. Gould Company of Middletown, New York, I give, devise and bequeath to [Trustees] * * * for the following uses and purposes: *To retain said shares of stock or to sell the same* whenever my said Trustees shall deem it advisable, *and to reinvest the proceeds of the sale of said stock* * * * for the use of my grandson, GERALD F. GOULD, JR., until he shall attain the age of thirty years ''. (Emphasis supplied.)

The H. D. Gould Company was what is known as a '' close '' corporation, almost all of the outstanding stock being held by members of the Gould family, and the particular block comprising the corpus of the trust being 352 shares, which represented more than 50% of the outstanding stock.

The petitioner, the beneficiary of the trust, commenced this proceeding following an agreement of sale of the trust corpus between the trustees, as vendors, and the president of the H. D. Gould Company, as vendee, entered into February 27, 1961. This agreement was at the price of $200 per share, for a total purchase price of $70,400 to be paid as follows:

Nothing down; $2,000 on September 15, 1961; $2,000 on September 15, 1962; $5,000 on September 15 of each year thereafter including 1968; balance on June 15, 1969.

The sale was made on the basis of an installment payment plan extended over a period exceeding eight years and terminating simultaneously with the trust.

The agreement provided for the immediate transfer of the stock and all incidental stock rights to the purchaser, who then assigned it in blank and placed the stock in escrow, but retained all incidental rights as owner, specifically the rights to vote the stock and to receive all dividends. The agreement further provided that upon default, the payments made by the purchaser were to be retained by the sellers as liquidated damages, the stock returned and the contract to be void.

The petitioner-appellant, *inter alia,* contends that the trustees, by entering into this agreement, exceeded the authority granted by the terms and conditions of the trust established under the will and accordingly, the agreement is not enforcible.

The will expressly gave the trustees the power to sell the stock, but it was intended that it be a complete sale and that a substantial portion of the proceeds would be immediately available to invest and reinvest and that proper safeguards would be incorporated into any agreement sufficient to protect the trustees and beneficiary during the period of the sales agreement. Here, there were no proceeds to invest resulting from this alleged sale, but to the contrary the substantial portion of the monetary proceeds of the sale became payable, if at all, at the termination of the installment agreement. The so-called sales agreement is in reality nothing more than an option, coupled with ownership rights, which the purchaser could renounce at any time and suffer only slight money damage.

A trial balance, dated January 31, 1961, approximately one month before the date of the agreement, indicates a surplus in excess of $100,000 readily available to the purchaser. We also note, using the same balance sheet, that by the application of the corresponding figures used in the appraisal on March 31, 1960, the book value of the stock would have been considerably in excess of $400 a share. By what appears to be a capital account method used by the attorney for the petitioner and applied to the January 31, 1961 balance sheet, the book value of the stock was approximately $394.40 per share, conceded to be correct by the attorney for the respondent, Swensen. The trustees, however, gave no consideration to the January, 1961 detailed balance sheet but elected to adopt what is referred to as an appraisal report based on book value of March 31, 1960, approximately 11 months prior to the sale in February, 1961.

The paucity of the proof offered to justify the sales price is of limited probative value.

The proof, while directed to the competency of the trustees, *ipso facto,* tested the terms and conditions of the agreement. We are not determining that installment payment plans *ab initio* are not a proper subject for a trust agreement, but limiting our decision to the facts herein which show an agreement devoid of proper or adequate safeguards for the sellers who, as trustees, were obligated to protect the beneficiary in accordance with the literal terms of the trust. The liability of the trustees in the event of a loss is self-evident. The yardstick for determining the duties of trustees is governed by the rule of the " prudent man ". (*Matter of McCafferty,* 147 Misc. 179, 207.)

The relief which we grant herein we consider imperative, as of now, rather than awaiting a final accounting at the termination of the trust. The court will render a decision for what appears to be for the best interests of all of the litigants.

The argument by the trustees that the will did not give them the power to operate the business appears to be without merit and, in any event, such opinion could not be a justifiable reason for the sale. If they had any question about their powers and rights, a proceeding before the Surrogate was available.

In sum, the failure to properly protect the interest of the beneficiary left the trustees in the vulnerable status, upon default of any installment payment, of repossessing the stock of a bankrupt business.

The appellant also seeks the removal of the trustees upon the ground that they have acted improvidently in entering into this agreement and that they are operating under a conflict of interest.

Upon the record before this court, it does not appear that the trustees have any interest which conflicts with their duties as trustees.

The trustees, of course, if they find themselves unable for any reason to carry out the terms of the trust, may resign their positions, but these and other matters additionally raised on this appeal will be considered by the Surrogate upon remission. We limit our decision solely to the finding that the agreement between the parties, dated the 27th day of February, 1961, did not conform to the terms and conditions of the trust and the trustees are prohibited from transferring the stock to the alleged purchaser.

The decree of the Surrogate dismissing the petition on the merits should be reversed and the matter remitted for further proceedings not inconsistent herewith.

TAYLOR, J. (dissenting). Apart from that of ancillary character the sole relief prayed for in the petition is the revocation of the letters of trusteeship and the removal of the trustees for alleged misconduct in the execution of the affairs of the trust. (Surrogate's Ct. Act, § 99, subd. 2.) Specifically it is charged that the fiduciaries — a member of the Bar and a trust company — had wasted and improperly applied and managed the sole asset of the trust, improvidently and in excess of the power granted by the will had entered into the agreement for the sale of the capital stock upon an installment payment basis and because of prior business and professional contacts with the corporation had developed undivorceable loyalties which were in conflict with the proper discharge of their duties as trustees.

By statute (Surrogate's Ct. Act, § 101) the removal of a trustee or the revocation of letters issued to him is purely discretionary. (*Stolz* v. *New York Cent. R. R. Co.,* 7 N Y 2d 269, motion for reargument denied 7 N Y 2d 995; *Matter of Clark,* 136 Misc. 459.) In the exercise of his statutory power the Surrogate dismissed the petition. It is not found that the discretion was abused. Hence, I perceive no basis to justify our vitiation of the agreement of purchase and sale of the trust asset at this stage of the administration of the trust estate — particularly since the agreement itself was not an issue in the proceeding and bore relevance only to the question whether the revocative and removal processes should be invoked for misconduct. (Surrogate's Ct. Act, §§ 40, 99, 101.)

The terms of the agreement may be inadequate to protect the *cestui que trust* from pecuniary loss. That, of course, depends upon future events. If they should prove to be, the ruling of the Surrogate does not relieve the trustees from responsibility for the omission or other act which may occasion loss to the trust estate unless exonerated by other provisions of the will, the import of which we need not now decide. (*Matter of Sherman,* 9 Misc 2d 731, affd. 279 App. Div. 981, motion for leave to appeal denied 279 App. Div. 1065.)

Accordingly, I would affirm the order appealed from.

BERGAN, P. J., GIBSON and REYNOLDS, JJ., concur with HERLIHY, J.; TAYLOR, J., dissents, in an opinion, and votes to affirm.

Decree reversed, on the law, and the proceeding remitted for further proceedings not inconsistent with the opinion herein, with costs to appellant payable from the estate.