STATE TAX COMMISSIONER

v.

**WILMINGTON TRUST COMPANY, Executor of the Estate of Angus B. Echols, Settlor of Angus B. Echols Trust No. 5157.**

Superior Court of Delaware.

New Castle.

Dec. 5, 1968.

## OPINION

Edward J. Wilson, Wilmington, for plaintiff.

David N. Williams, Wilmington, for defendant.

CHRISTIE, Judge.

This appeal from a decision of the State Tax Board involves the narrow issue of whether the capital gains realized on General Motors stock distributed to duPont stockholders as a result of antitrust litigation is taxable under Delaware income tax law as a capital gain to a revocable trust which held the duPont stock or to the settlor of the trust who was also the income beneficiary of the trust.

The facts are not in dispute. Angus B. Echols, a duPont Company executive, set up a revocable trust in 1957 with Wilmington Trust Company as trustee. Under the terms of the trust agreement the net income from the trust was payable to Echols during his life and after his death to his wife and children. He reserved the right to modify, alter or terminate the agreement either in whole or in part. Common stock of the duPont Company was assigned to the trust.

In 1961 Echols amended the trust agreement to require in effect that any shares of stock distributed to the trustee as a stockholder which the trustee finds would be likely to reduce the future earning capacity of the corporation should be retained by trustee as principal and not distributed to the beneficiary as income. This amendment to the trust agreement was obviously made with a view to the distribution of General Motors stock to duPont stockholders.

When such distributions took place in 1962 and 1964 the trustee retained the General Motors stock as principal in accord with the amended trust agreement. Trustee paid State income taxes on the capital gains connected with such distributions in accordance with the special tax computation provisions of 30 Del.C. § 1148.

The State Tax Commissioner contended, however, that the taxes should have been paid by the beneficiary as if the capital gain inured to the benefit of the beneficiary and not to the trust since the beneficiary could have revoked the trust at any time and claimed the stock. If the capital gains were taxable to the beneficiary rather than to the trust a somewhat higher income tax rate would apply.

The Tax Commissioner sought an advisory opinion from the Attorney General on the matter. On July 29, 1966, the Attorney General issued a letter opinion which upheld the taxpayers contention that the capital gains were taxable to the trust. The Commissioner asked the Attorney General to reconsider the opinion but there is no evidence that any action was taken as a result of this request. During the interim Mr. Echols died and Wilmington Trust Co., as executor of his estate, became a party to the dispute. The Tax Commissioner assessed the tax against the Echols estate and the estate appealed the matter to the State Tax Board which ruled against the Tax Commissioner in an opinion dated February 28, 1968. The appeal to this Court followed.

■ It should be noted that the scope of review is limited. The appeal of an administrative decision to this Court does not involve a trial de novo. Lockwood v. Unemployment Compensation Commission of Delaware, 6 Terry 536, 76 A.2d 311 (Superior Ct., 1950). The decision of the Board if supported by the record will be sustained in the absence of an abuse of discretion or an error of law. Searles v. Darling, 7 Terry 263, 83 A.2d 96 (1951); Application of Beattie, 4 Storey 506, 180 A.2d 741 (Superior Ct., 1962).

■ The Court will take judicial notice of some of the circumstances surrounding the distribution of the General Motors stock. The fact that the duPont Company held a substantial interest in General Motors Corporation had always been well known. Such holding was a subject of comment in the annual reports of duPont Company and in any analysis of the value of duPont stock. The litigation in the federal courts which culminated in the order of distribution was of several years' duration. When distribution finally took place it was generally recognized that such distribution had many of the characteristics of a distribution of capital.

The United States Congress passed special tax legislation providing in effect that the distributions should be taxed as capital gains and not as ordinary income. 26 U.S.C. § 1111. The income tax law of Delaware was amended so as to give special capital gains treatment to these distributions which treatment was not theretofore available as to other corporate distributions. 30 Del.C. § 1148. The trust law of Delaware was amended so as to permit trustees to allocate distributions of this type to corpus rather than to income. 12 Del.C. § 3526. The Delaware Supreme Court held that the distributions amounted to a court-compelled return of capital to duPont shareholders and should be treated accordingly by fiduciaries. Fulweiler v. Spruance, Del., 222 A.2d 555 (1966).

■ The Tax Commissioner recognizes that the stock distribution is to be treated as a distribution of capital for the purpose of computing the amount of tax due. He also must acknowledge that the trustee has properly regarded the stock distribution as a return of capital under the terms of the trust agreement, and therefore, it was proper not to distribute the stock as income to the beneficiary of the trust. The beneficiary had no right to demand such distribution as income. Although he did not do so, he could have revoked the trust in whole or in part.

The Tax Commissioner says that since the stock could have been distributed to the beneficiary by a partial revocation of the trust it should be taxable as a capital gain to the beneficiary. To support this contention the Commission relies on the language of the State Income Tax Law found in 30 Del.C. § 1152(b) and (c) which provides in effect that a trust shall be taxable as to its income (including capital gains) but goes on to state that "income properly paid or credited subject to withdrawal * * * shall be returned by the * * * beneficiary * * * as part of his * * * income * * *" The phrase "credited subject to withdrawal" is defined elsewhere as applying when the taxable credited "has the right or option to make withdrawal". 30 Del.C. § 1101.

If the Commissioner is correct in his contention then almost no corporate distribution would be taxable to a revocable trust and almost all distributions would be taxable to the beneficiary. This contention would find its most extreme application in cases such as the case at Bar where distribution to the beneficiary was not required by statute and was forbidden by the trust provisions and by fair extension of a Supreme Court decision unless there was an actual revocation of a part of the trust.

Section 676 of the United States Internal Revenue Code imposes federal income tax liability—with certain exceptions—upon the

*grantor* of a revocable trust. Delaware income tax law on the other hand imposes such liability on the *trustee* of a revocable trust with certain exceptions. 30 Del.C. § 1101 "Taxable" (5) (ii). The difference in approach is obvious. Yet the State Tax Commissioner urges the Court to interpret the State statute in such a way as it would be interpreted if it were copied from the federal statute.

The question for decision is whether the settlor's power to revoke the trust, either in whole or in part, is to be regarded as the right or option to make withdrawal within the meaning of the income tax statute and whether gains on distributions of stock which are subject to possible withdrawal only by revocation of the trust are to be taxed as a gain of the beneficiary or settlor.

■ The Court is of the opinion that corporate distributions of stock are taxable as a capital gain to the revocable trust unless such distribution:

1) Is received as income under the trust law of the State and distributable as income under the terms of the trust; or,

2) Is subject to withdrawal by the beneficiary through the exercise of powers other than the power of complete or partial termination of the trust.

The Supreme Court of Wisconsin concluded that stock had to be distributable as income before it was taxed as such within the meaning of a corresponding statute. First Wisconsin Trust Co. v. Wisconsin Department of Taxation, 237 Wis. 135, 294 N.W. 868 (1940).

■ The General Motors stock distributed here as a result of court-ordered divestiture was properly allocated to principal under a trust amendment requiring the trustee to allocate to principal all corporate distributions which might reasonably reduce future corporate earning capacity. A statutory provision similar to the trust amendment also required such allocation of the General Motors stock to principal. 12 Del.C. § 3526. Therefore, the stock could not have been considered trust income and was not distributable as such.

■ The stock was available to the settlor only if he revoked the trust as to the stock and ordered the trustee to distribute it to him. I am of the opinion that *a specific power of withdrawal would be required in order to convert these capital distributions into gains taxable to the beneficiary* and that the statute did not intend to tax as a gain of the beneficiary distributions he might receive only by exercise of the broad power to revoke the trust itself.

Income of revocable trusts, including capital gains, are made taxable to the trustee under the provisions of 30 Del.C. § 1101. If this Court holds that a power of revocation is equivalent to a right to withdraw within the meaning of the tax statutes, the responsibility for the tax thereon would go back to the beneficiary. Such a holding would render Section 1101 almost meaningless. If such a result were intended, the legislature surely would have framed Section 1101 along the lines of Section 676 of the United States Internal Revenue Code and made the income from revocable trusts taxable to the settlor in the first instance rather than to the trustee.

The decision of the State Tax Board in favor of taxpayer is affirmed. It is so ordered.