**STATE TAX COMMISSIONER,**
Respondent Appellant,

v.

**Thomas W. STEPHENSON, Petitioner,**
Appellee.

Superior Court of Delaware,
New Castle.

May 6, 1970.

Edward J. Wilson, Deputy Atty. Gen.,
for State Tax Commissioner.

Thomas W. Stephenson, pro se.

Thomas P. Sweeney, of Richards, Layton & Finger, Wilmington, for Edmund N. Carpenter, II and Farmers Bank of State of Delaware, amicus curiae supporting appellee.

Joseph H. Geoghegan, of Potter, Anderson & Corroon, Wilmington, for Wilmington Trust Co., amicus curiae, supporting appellee.

OPINION

CHRISTIE, Judge.

This appeal from the decision of the State Tax Board involves the question of whether or not a capital gain, realized by a trustee of a revocable trust through investment of trust principal in a commingled trust fund, is to be treated differently for Delaware income tax purposes than a capi-

tal gain realized by such a trustee from a distribution of corporate stock pursuant to an antitrust decree. It has been established that the stock distribution, if added to principal and not passed on to the beneficiary or credited to him subject to withdrawal as income, is taxable as income to the trust and not to the income beneficiary of the trust. State Tax Commissioner v. Wilmington Trust Company, Executor of the Estate of Angus B. Echols, Settlor of Angus B. Echols, Trust No. 5157, 266 A.2d 419 (Superior Ct., 1968). The Court must now decide whether other capital gains retained as principal by the trustee of a revocable trust are also taxable as income to the trust rather than to the income beneficiary. The issue is complicated because the applicable Delaware statutes differ from the federal statutes and the statutes of other states.

The facts are not in dispute. On August 14, 1941, Thomas W. Stephenson (the petitioner, grantor and income beneficiary) entered into a so called Funded Life Insurance Trust Agreement with Equitable Trust Company (now known as Bank of Delaware and hereafter referred to as trustee). Pursuant to his reserved power to amend the trust instrument, the petitioner substituted an entirely new agreement on June 9, 1952. Under the provisions of the new agreement the petitioner reserved the right:

"To withdraw from the operation of this agreement any of the property held in trust; to change the beneficiaries of the trust, their shares and the plan of distribution; and to modify, amend, add to, or revoke this agreement, provided that the duties, responsibilities, and compensation of the Trustee shall not be changed without its consent."

Among the powers of the trustee was that of allocating extraordinary receipts to income or principal. Trustee was authorized:

"To apply stock dividends, other noncash dividends, and other extraordinary dividends or distributions received by it to principal or income or to apportion such dividends or distributions between principal and income, to charge the premiums of securities purchased at a premium either against principal or income or partly against principal and partly against income, and to determine what expenses, costs, taxes and charges of all kinds shall be charged against principal and what against income; and in each case its decision with respect thereto shall be conclusive and binding upon all parties in interest."

On December 24, 1958, the petitioner further amended the distributive provisions of the trust agreement.

Under the agreement as amended the income was payable to the petitioner during his lifetime or added to the principal as the petitioner directed. Upon the petitioner's death, the trustee is directed to establish a so-called marital trust for the benefit of petitioner's widow and a residuary trust in which she is to have (had) a beneficial life estate. The children of the petitioner are the primary remaindermen.

In 1966, the trust had cash receipts of $1,699.98 of which $803.32 was ordinary income distributable to the petitioner at his direction. The petitioner paid the state income tax on this sum. The balance of $896.66 came from a capital gain dividend received from the trustee's common trust fund, a regulated investment company in which it had invested the trust funds. The capital gain was retained by the trustee upon trustee's determination that the funds were properly a part of the principal. Upon this sum the trustee, rather than the income beneficiary, paid the tax. The respondent, Tax Commissioner, assessed a deficiency against Mr. Stephenson as income beneficiary upon the basis that the capital gain could have been paid to the income beneficiary if there had been a partial revocation of the trust and, therefore, such gain should have been regarded as taxable to the beneficiary in accordance with 30 Del.C. § 1152.

The pertinent part of that statute reads as follows:

"(a) The fiduciary shall be responsible for making the return of income for an estate or trust for which he or it acts. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in this chapter * * *. In cases under paragraphs (3), (4) and (5) of Section 1151 of this title the fiduciary shall include in the return a statement of each beneficiary's distributive share of net income whether or not distributed before the close of the taxable year for which the return is made.

(b) In cases under Section 1151 of this title the tax shall be imposed upon the net income of the estate or trust and shall be paid by the fiduciary. In determining net income under this paragraph, there shall be deducted the amount of any income properly paid to or credited subject to withdrawal by any legatee, heir or other beneficiary and a further deduction for net income paid to or accruing to the benefit of a non-taxable. The same exemptions and deductions allowable to a single person under Sections 1117–1119 of this title shall be allowed to estates or trusts.

(c) Income properly paid or credited subject to withdrawal, deducted under this section, shall be returned by the legatee, heir or beneficiary to whom it has been paid or credited subject to withdrawal, as part of his or its income for the income year in which received or credited."

The cross references to Section 1151 are references to provisions imposing a tax on income of estates and trusts including revocable trusts.

Under the statute the income received by a trust (whether it be ordinary income or a capital gain) is taxable to the trustee only to the extent that it is not "paid to or credited subject to withdrawal by any * * * beneficiary".

Problems arise as to the proper tax treatment of capital gains because under the Delaware statute and also under the wording of trust instruments there are sometimes differences of opinion as to whether a capital gain is to be distributed as income or retained as principal. Furthermore, it is the Tax Commissioner's position that all capital gains of revocable trusts should be taxed as if distributable as income since a partial revocation of the trust could compel distribution.

In this case the petitioner attempted to resolve some of these issues by appealing the decision of the Tax Commission to the State Tax Board. The Tax Board reversed the Tax Commission.

The Tax Board made a detailed study of state and federal statutes and the various amendments which have been made. It concluded that under state law the mere right in the beneficiary to revoke the trust in whole or in part does not render the undistributed capital gain of an inter vivos trust taxable to the trustor or beneficiary. The Tax Board concluded that under both the trust agreement and the governing statute, the capital gains here in issue were properly allocated to the corpus of the trust citing 12 Del.C. § 3526 and 3 Scott on Trusts, (3rd Ed), pp. 1898–99.

The Tax Board's decision is clearly in accord with the evidence, the authorities cited therein and the recent decision of this Court in State Tax Commissioner v. Wilmington Trust Company, Executor of the Estate of Angus B. Echols, 266 A.2d 419 (Superior Ct. 1968). See also First Wisconsin Trust Co. v. Department of Taxation, 237 Wis. 135, 194 N.W. 868 (1940).

In the *Echols* case, *supra,* the Court held that the capital gains realized when General Motors stock was distributed to duPont Company stockholders as a result of antitrust litigation and held by a trustee as a part of the principal of a revocable trust is taxable under Delaware income tax law to the trustee of such trust. The Court there noted that under the provisions of 12 Del.

C. § 3526 * and also by the terms of the trust instrument, such distribution was allocable to the principal of the trust estate, and the income beneficiary of the trust had no right to withdraw such principal as income. The distribution was held to constitute a return of trust assets and was deemed taxable as a capital gain to the revocable trust since it was not "subject to withdrawal by the [income] beneficiary through the exercise of powers other than the power of complete or partial termination of the trust".

The capital gains distributions made by a common trust fund operated as a regulated investment company do tend to reduce the income potential of the invested capital and jeopardize the future earning capacity of the trust in that a part of the corpus of the trust fund is distributed and, thus, no longer available to produce income. The allocation of such funds to income is likely to reduce the future earning capacity of the trust estate represented in the common trust. A common trust fund operating as an investment company is in the business of buying, holding and selling corporate stocks and other securities but it seeks capital gains for the trusts it represents. A better balanced and diversified trust portfolio may be maintained by investing the funds of several trusts. By adhering to federal regulations (15 U.S.C. § 80a-3) regulated investment companies, including qualifying common trust funds, are entitled to segregate ordinary or straight income

from capital gains and to pass each on to the investor for appropriate separate income tax treatment. (26 U.S.C. § 854). Thus, the portfolio maintained by such common trust may engender "straight income" in the form of dividends and interest, and "capital gains" in the form of net profit made on the sale or exchange of its capital assets. These receipts are passed on to the individual trust shareholders as dividends, and are classified as either income or capital gains for the appropriate taxation rate to be paid thereon.

A capital gain made by a trust through investment in a common trust fund which is a regulated investment fund is not unlike a capital gain made by the direct sale of trust assets or a capital gain received by a trust in the form of a stock distribution.

The *Echols* ruling finds application to all trusts revocable or irrevocable if the capital gain realized by the trust is allocated to principal under the provisions of 12 Del.C. § 3526 set out in the footnote, or under the provisions of the trust instrument.

The only important features distinguishing this case from the *Echols* case are:

1) In the *Echols* case the capital gain took the form of a court ordered distribution of General Motors stock to the stockholders of duPont, whereas, in this case the capital gain took the form of cash made by sale of securities held for the trust in a commingled common trust fund separately operated by the trustee.

---

* The pertinent provisions of 12 Del.C. § 3526 read as follows:

(a) Unless expressly or by necessary implication provided otherwise in the instrument creating or defining the duties and powers of a trustee, a trustee shall treat all property, tangible or intangible, received as a corporate distribution upon or with respect to shares of stock held in trust, including shares of the same class:

(1) As trust income to the extent that, in the judgment of the trustee, such distribution would be regarded as income from an investment rather than a diminution of an income producing property, by men of prudence, discretion and intelligence in the management of

their own affairs; and in making this determination the trustee may consider whether such distribution would be likely, of itself, to have the effect of reducing materially the future income of the trust from the shares of stock upon or with respect to which such distribution shall be made (assuming that the trustee should continue to hold such shares of stock for an indefinite period), and any other circumstances and factors which the trustee may deem relevant and significant.

(2) As trust principal to the extent that, in the judgment of the trustee, such distribution is not determined to be trust income under provisions of paragraph (1) of this subsection.

2) In the *Echols* trust instrument there was language requiring the trustee to allocate the capital gain there made to principal; whereas, in this case the trustee had discretion as to how the capital gain should be allocated.

The Tax Commissioner has attempted to limit the application of the *Echols* ruling by issuing Directive #57 which limits the ruling to cases where the trust instrument actually contains language requiring the trustee to allocate capital gains to principal such language to correspond to that of 12 Del.C. § 3526.

■ The following is clear under the provisions of the statute as it is interpreted by the Court:

1) The application of 12 Del.C. § 3526 is not primarily dependent upon the form which a corporate distribution takes. A distribution of cash, if it is a capital gain and not ordinary income, may be tested under the statutory standards just as a distribution of stock may be tested. The fact that the distribution is made in the form of cash is merely one of many of the circumstances that would be taken into consideration by the trustee in determining the proper allocation of the distribution;

2) The application of 12 Del.C. § 3526 is not dependent upon the presence of language similar to the statutory language in the trust instrument. Indeed, the statute sets standards to apply in the absence of provisions in the trust instrument which would require a contrary result.

3) If the trustee properly allocates a capital gain corporate distribution to principal under the terms of 12 Del.C. § 3526 and if the beneficiary has no right to demand the distribution of such asset to himself as income, then, under the provisions of 30 Del.C. § 1152 and the *Echols* holding, the capital gain involved would be taxable as income to the revocable trust and not to the income beneficiary.

■ The Tax Commissioner erred in attempting to confine the *Echols* decision to trusts containing the language of 12 Del.C. § 3526. Furthermore, any contention that a capital gain received as cash thereby loses its status as a capital gain is without merit.

It is clear, then, that if 12 Del.C. § 3526 finds application in this case, the trustee properly allocated the gain to principal and the gain would be taxable to the trust and not to the beneficiary. However, in this case the trust instrument does contain language specially authorizing the trustee to make its own determination as to the allocation of corporate distributions between principal and income; and it is possible that the trustee has a broader freedom of choice under the language in the instrument [quoted early in this opinion] than it would have under the statute standing alone.

For the purpose of clarifying the issue before the Court I will assume (without so holding) that the trustee was not limited by the provisions of 12 Del.C. § 3526 in making the allocation of the capital gain to principal and that under the terms of the trust instrument, trustee was free to allocate any capital gain to income or to principal without regard to the standards set up in 12 Del.C. § 3526. Under the circumstances does this option in the trustee cause a shift of the responsibility for the income tax on such gain from the trust to the beneficiary?

It cannot be logically argued that a capital gain which could be distributed to the beneficiary in the sole discretion of the trustee but which was not so distributed was "properly paid to or credited subject to withdrawal by any beneficiary" within the meaning of 30 Del.C. § 1152. A capital gain properly allocated to principal by a trustee, whether the trustee acts under discretion vested in the trustee by the trust instrument or under statutory mandate, cannot be regarded as having been paid to a beneficiary or credited subject to withdrawal by the beneficiary.

The fact that the trustee could have treated a capital gain as if it were income and that such authority came from the trust instrument does not in any way change the tax treatment of the capital gain since it is neither distributed as income nor credited subject to withdrawal as income.

The Court holds that capital gains of revocable trusts not distributed to beneficiaries and not distributable as income to the beneficiary on demand are taxable to the trust and not the beneficiary under Delaware law. The mere fact that all or any part of the trust may be revoked by the grantor or by a beneficiary who was also the grantor does not change the statutory scheme unless, of course, such revocation takes place during the year the gain was realized.

The cases cited by the Tax Commissioner from the federal courts and from Massachusetts find no application in Delaware because of the significant differences in the applicable statutes.

Directive #57 is contrary to the statute and invalid.

The decision of the Tax Board is affirmed.

It is so ordered.