ESTATE OF GEORGE I. SPEER, DECEASED, BANK OF DELAWARE AND ALICE M. SPEER, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3346–69.    Filed March 15, 1972.

*Howard L. Williams* and *Daniel L. Twer*, for the petitioners. *Albert J. O'Connor*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioners' estate tax in the amount of $510,195.19. The sole issue for our determination is whether the remainder interest in a trust established by the decedent fails to qualify for a charitable deduction pursuant to section 2055 [1] because of the management discretion vested in the trustee.

---

All of the facts have been stipulated and are found accordingly.

Petitioners are the executors of the Estate of George I. Speer (referred to herein as decedent), who died on June 21, 1965, a resident of Wilmington, Del. Petitioner Alice M. Speer had her legal residence in Wilmington, Del., at the time the petition herein was filed. Petitioner Bank of Delaware is a corporation organized and existing under the laws of the State of Delaware having its principal office in Wilmington, Del., at the time of filing the petition herein. The estate tax return was filed with the district director of internal revenue, Wilmington, Del.

On July 12, 1963, the decedent created a living trust, with the Bank of Delaware as sole trustee. The trust was fully revocable by the decedent during his lifetime. In addition, the trustee could invade principal for the decedent's benefit in the event of the latter's incapacity.

The trust agreement provided for payment of the income to the settlor, or the accumulation thereof as settlor might direct, during his lifetime. After the settlor's death, the trustee was to pay one-half of the *net* income of the trust estate to settlor's sister, Alice M. Speer, for life; one-fourth of said *net* income to settlor's sister, Elizabeth S. Coppage, for life; and one-fourth to settlor's brother, Robert A. Speer, for life. The trustee was not given any power to invade principal for the benefit of the income beneficiaries. Upon the death of all the life tenants, or upon the settlor's death if he should survive them all, the trust provided:

* * * Trustee shall create a fund with whatever remains of the trust estate to be known as the George I. Speer and Lizzie F. Speer Memorial Fund, the net income from which shall be paid annually to the New Castle Presbytery, by whatever name known, to be used by the said Presbytery for general purposes in memory of Settlor's parents. * * * [2]

Additionally, upon the death of any of the life tenants, his or her share of the net income of the trust estate was to be accumulated and added to principal for ultimate disposition in accordance with the above-quoted provision.

The trust agreement contained the following provision dealing with the investment powers of the trustee:

Settlor desires that Trustee be permitted to invest a larger proportion of the trust estate in common stocks than might otherwise be considered proper, and also for a larger proportion thereof to be invested in the stock or other securities of Bank of Delaware and International Business Machines Corporation, or their corporate successors, than might otherwise be considered proper. It is therefore agreed that Trustee shall be under no duty to diversify the investments held hereunder, and that in acquiring new investments by purchase or exchange, as

---

[2] Respondent makes no argument that the New Castle Presbytery fails to meet the requirements of a charitable organization as specified in sec. 2055(a)(2).

well as in retaining investments that were a part of the trust estate at the time of the creation or that were thereafter delivered by Settlor's Executor to Trustee in kind (and also in acquiring additional stocks, bonds, notes or other securities of Bank of Delaware and International Business Machines Corporation, or their corporate successors, through the exercise of options, rights, and conversion privileges) Trustee, in its discretion, may disregard the rules of diversification of investments usually considered applicable to fiduciaries, and that Trustee shall not be liable for any depreciation of or loss to the trust estate resulting from disregarding such rules of diversification.

The trust agreement also authorized the trustee, in its absolute discretion:

To apply stock dividends, other non-cash dividends and other extraordinary dividends or distributions received by it to principal or income or to apportion such dividends or distributions between principal and income, to charge the premiums of securities purchased at a premium either against principal or income or partly against principal and partly against income, and to determine what expenses, costs, taxes and charges of all kinds shall be charged against principal and what against income. In each case its decision with respect thereto shall be conclusive and binding upon all parties in interest;

The trust agreement further provided that all questions pertaining to the validity, construction, and administration of the trust were to be determined in accordance with the laws of Delaware.

Decedent's last will and testament poured his residuary estate into the aforementioned trust.

The trust assets at all pertinent times consisted almost entirely of publicly traded securities. The following table shows the holdings of International Business Machines shares by the trust at various dates indicated.

| Shares | Date | Market value of IBM stock held | Total market value of trust assets | Percent of IBM |
|---|---|---|---|---|
| 3063 | 7/15/63 | $1,323,216 | $1,572,015.00 | 84.17 |
| 3063 | 4/13/64 | 1,807,170 | 2,106,730.00 | 85.78 |
| 3829 | 4/12/65 | 1,795,801 | 2,139,148.00 | 83.95 |
| 3500 | 4/25/66 | 1,893,500 | 2,458,786.70 | 77.01 |
| 4500 | 4/24/67 | 2,128,500 | 2,723,640.99 | 78.15 |
| 4055 | 4/19/68 | 2,578,980 | 3,380,010.17 | 76.30 |

We are again confronted with the question of the extent to which management powers conferred upon a trustee with respect to allocation of income and expenses operate to preclude the deductibility under section 2055 (a) (2) [3] of the otherwise undisputed value of a remainder interest in favor of a qualified charitable organization. We dealt with

[3] SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.

(a) IN GENERAL.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers * * *

this question for the first time in *Estate of Lillie MacMunn Stewart*, 52 T.C. 830 (1969),[4] but our decision in favor of the taxpayer was reversed on appeal, 436 F. 2d 1281 (C.A. 3, 1971), certiorari denied 404 U.S. 828 (1971). In the brief period of time since our opinion in *Stewart*, there has developed a substantial body of case law dealing with the effect of a trustee's administrative powers on the deductibility of charitable remainders. The Government has prevailed in *Rand* v. *United States*, 445 F. 2d 1166 (C.A. 2, 1971); *First National Bank in Palm Beach* v. *United States*, 443 F. 2d 480 (C.A. 5, 1971), certiorari denied 404 U.S. 983 (1971); *Miami Beach First National Bank* v. *United States*, 443 F.2d 475 (C.A. 5, 1971), certiorari denied 404 U.S. 984 (1971); *Florida Bank at Lakeland* v. *United States*, 443 F. 2d 467 (C.A. 5, 1971); *Estate of Stewart* v. *Commissioner*, 436 F. 2d 1281 (C.A. 3, 1971); *Detroit Bank & Trust Co.* v. *United States*, 338 F. Supp. 971 (E. D. Mich. 1971); *Jacobs* v. *United States*, 334 F. Supp. 388 (S.D.N.Y. 1971). The taxpayer has prevailed in *Greer* v. *United States*, 448 F. 2d 937 (C.A. 4, 1971); *Peoples Trust Co. of Bergen County* v. *United States*, 444 F. 2d 193 (C.A. 3, 1971); *Doss* v. *United States*, 326 F. Supp. 1320 (N.D. Tex. 1971); *Estate of Toulmin* v. *United States*, 326 F. Supp. 1028 (S.D. Ohio 1971); *Old Colony Trust Co.* v. *United States*, 317 F. Supp. 618 (D. Mass. 1970); *Marold* v. *United States*, 322 F. Supp. 664 (D.N.J. 1970); *Bankers Trust Co.* v. *United States*, 308 F. Supp. 545 (S.D.N.Y. 1970), affirmed on another issue 438 F. 2d 1046 (C.A. 2, 1971); *Estate of Phyllis W. McGilli-cuddy*, 54 T.C. 315 (1970).[5]

\*     \*     \*     \*     \*     \*     \*

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \* \* \*

Respondent's Estate Tax Regulations contain the following provisions:

Sec. 20.2055–2. Transfers not exclusively for charitable purposes.—

(a) *Remainders and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. \* \* \*

(b) *Transfers subject to a condition or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power. \* \* \*

[4] At the time of our opinion in *Stewart,* apparently only one court had passed upon the question. See *Gardiner* v. *United States*, an unreported case (D. Ariz. 1969, 24 A.F.T.R. 2d 69–6108, 69–2 U.S.T.C. par. 12,628).

[5] Compare also *Worcester County National Bank* v. *King*, 268 N.E. 2d 838 (Mass. 1971).

By way of summary, the Government has been successful in the Second and Fifth Circuits; unsuccessful in the Fourth Circuit, in the District Courts (with the exception of *Florida Bank at Lakeland*, *Jacobs*, and *Detroit Bank & Trust Co.*), and in this Court; and has won one and lost one in the Third Circuit. Obviously, this melange of cases furnishes no divining rod for decision herein. Moreover, the confusion is compounded by the fact that each of the decided cases turns on its own facts and the vagaries of local probate and trust law as seen through the eyes of the Federal courts.

The essence of our decision in *Stewart* was that, even taking into account a modicum of uncertainty as to the extent of a trustee's discretionary power under the New York law involved in that case, we were not disposed "to turn what are commonplace trust powers intended simply to provide administrative flexibility into a substantive grant of dispositive flexibility." See 52 T.C. at 836. Compare *Estate of Edward E. Ford*, 53 T.C. 114, 128 (1969), affirmed per curiam 450 F. 2d 878 (C.A. 2, 1971). We were not prepared to assume that the trustee might "exercise his powers in breach of his fiduciary responsibility" and "favor the life beneficiary over the remaindermen." See *Marold* v. *United States*, 322 F. Supp. at 669. While we are inclined, particularly in light of the unsettled state of the law as revealed by the previously cited intervening decisions, to adhere to our general view, we find it unnecessary to man the barricades in defense thereof in the instant case. In point of fact, the discretionary powers involved herein are considerably narrower than those which we dealt with in *Stewart*.

As the Third Circuit pointed out in *Stewart* (see 436 F. 2d at 1285–1286), the trustee therein was granted broad discretion in several specific respects. The following analysis reveals the difference between the *Stewart* powers and those of the trustee herein:

(1) In *Stewart*, the trustee had the specific power to invest in wasting assets and shares of investment companies. No such specificity is contained in the investment powers involved herein.

(2) In *Stewart*, the trustee had power to apportion a variety of specific items including rents, interests, dividends, property received in exchanges and reorganizations, payments in respect of wasting assets or unproductive property, and *any other receipt whatsoever*. In the case before us, the clause granting power to allocate receipts to principal or income is far narrower, being limited to "stock dividends, other non-cash dividends and other extraordinary dividends or distributions." We shall have more to say about this clause at a later point in this opinion.

(3) In *Stewart*, there was discretion in the trustee to determine whether to amortize the premium "at which any property may be

received or held" and to depreciate any expense on or any expense in connection with property of any kind. In the instant case, there was only a power to amortize and that was limited to "securities purchased at a premium."

(4) In *Stewart*, there was a specific power to discontinue any sinking fund or depreciation account and treat the same as income. No such power is specified in the instant instrument.

(5) In *Stewart*, the trustee had the power to pay from principal or income any deficit from the operation of property or any charge against the trust estate. In the instant case, the trustee was given only the power to determine "what expenses, costs, taxes and charges of all kinds shall be charged against principal and what against income." It is at least arguable that such langauge is limited to items involving cash outlay and does not cover such items as depreciation or depletion reserves or the broad category of "operating deficits."

We have already noted that, in the instant case, the power to allocate on the intake side is limited to "stock dividends, other non-cash dividends and other extraordinary dividends or distributions." We think that the narrow focus of this clause provides a crucial distinction. Compare *Estate of Stewart* v. *Commissioner*, 436 F. 2d at 1287. In each of the previously cited cases in which the Government prevailed, a far broader category of benefit to the income beneficiary was established. Additionally, as the following analysis indicates, there are other distinguishing elements:

(1) In *Rand* v. *United States*, *supra*, the "entire gross or net income" was given to the income beneficiary, *who was also the trustee*. The trustee was authorized to charge *all* operating and maintenance expenses against corpus and the trustee was authorized to make loans to himself for any purpose whatsoever. The corpus of the trust was an interest in a stock exchange seat, not publicly held securities such as are involved herein. Compare *Estate of Ford* v. *Commissioner*, 450 F. 2d 878 (C.A. 2, 1971), affirming per curiam 53 T.C. 114 (1969).

(2) In *First National Bank in Palm Beach* v. *United States*, *supra*, the instrument directed that any premium paid on securities be charged in its entirety against income. More importantly, the instrument specifically authorized the trustee to treat "liquidating dividends" as income. Respondent implies that the word "distributions" in the instant case should be construed to encompass liquidating dividends. We think not. That word is used in the context of "stock dividends, other non-cash dividends and other extraordinary dividends or distributions." Compare *Fulweiler* v. *Spruance*, 222 A. 2d 555 (Del. 1966). Compare also *Estate of Stewart* v. *Commissioner*, *supra*, where the Third Circuit distinguished *Bankers Trust Co.* v. *United States*,

*supra*, by according a narrow reading to the word "dividends" and inferring that a specific direction beyond a generally descriptive word was required to avoid the necessity of allocating distributions with respect to wasting assets under local law. See 436 F. 2d at 1287.

(3) In *Miami Beach First National Bank* v. *United States, supra,* the Fifth Circuit emphasized a specified power of investment in "shares or interests in investment trusts" with the potential consequence that capital gains distributions from mutual funds might be allocated to income. See *Estate of Lillie MacMunn Stewart,* 52 T.C. at 835. The Fifth Circuit also pointed out that dividends from mutual funds might be in the form of stock dividends and that the trust instrument specifically provided that, if the trustee had the option to take a dividend in cash or in the shares of the declaring corporation, the transaction was to be "considered a cash dividend and deemed income, irrespective of the choice made by the trustees." No such provision favoring the income beneficiary is present herein.

(4) In *Florida Bank at Lakeland* v. *United States, supra,* the instrument directed that payments to certain life beneficiaries were to be made from "income and *capital gains.*" (Emphasis added.) See *Jacobs* v. *United States, supra.* Compare *Peoples Trust Co. of Bergen County* v. *United States, supra,* where a similar specific direction with respect to capital gains from mutual funds was held not to preclude a deduction for the charitable remainder. See also Taggart, "Charitable Deductions for Transfers of Remainder Interests Subject to Invasion," 21 Tax L. Rev. 535, 566–569 (1966).

In determining the effect of broad discretionary administrative powers on the deductibility of charitable remainders, it is in order for us to look for indications, at least insofar as they are contained in the instrument itself, of the settlor's intention as to whether such powers should be exercised so as to favor the income beneficiary over the remainderman. See *Greer* v. *United States,* 448 F. 2d at 945–947; *Peoples Trust Co. of Bergen County* v. *United States,* 444 F. 2d at 197–199; *Estate of Stewart* v. *Commissioner,* 436 F. 2d at 1288; *Doss* v. *United States,* 326 F. Supp. at 1322; *Old Colony Trust Co.* v. *United States,* 317 F. Supp. at 622; *Bankers Trust Co.* v. *United States,* 308 F. Supp. at 547. First, the trust instrument herein contained a specific, although limited, power of invasion during the decedent's lifetime but no such power after his death. Such a clear indication of the decedent's knowledge and use of a power of direct invasion is a counterweight to interpreting discretionary powers of administration as creating a power of indirect invasion for the benefit of the income beneficiaries. See *Estate of Lillie MacMunn Stewart,* 52 T.C. at 835. Second, the provision for accumulation of income upon each life

tenant's death, instead of a direction that such income was to be paid to the other life beneficiaries, indicated a preference for the charitable remaindermen. Third, we think it significant that the instrument itself indicated a desire that the trustee keep a larger than normal proportion in stock of International Business Machines Corp., a growth- rather than income-oriented investment, and that, at all times pertinent, more than 75 percent of the market value of all trust assets consisted of such stock.[6] Finally, we note that the trustee was a bank, which imparts a recognition by the settlor that the management powers would be exercised with more circumspection than might be the case where an individual is designated. Compare *Estate of Lillie Mac-Munn Stewart*, 52 T.C. at 835, with *Rand* v. *United States, supra.*

An examination of local law is also essential to a determination of the effect of discretionary administrative powers on the duties of a trustee. The main Delaware authority is 8 Del. Code Ann., tit. 12, sec. 3526 (1970 supp.),[7] which sets forth certain general guidelines for the apportionment between principal and income of corporate distributions with respect to shares of stock held in trust. Respondent contends that these guidelines are inapplicable in the instant case, because the trustee was given absolute discretion by the instrument to make such allocations. Said discretion, argues respondent, expressly or by necessary implication provides that corporate distributions be treated in a manner different than would be the case if the statutory guidelines were applied. Petitioners, on the other hand, contend that the trustee is bound by the statutory guidelines, relying

[6] See Scott, "Principal or Income?", 100 Trusts and Estates 180, 182 (1961), where the author suggests that a trust estate consisting largely of growth stocks such as IBM is more advantageous to the remainderman than to the income beneficiary.
[7] Sec. 3526. Corporate distributions received by trustee; allocation between principal and income.

(a) Unless expressly or by necessary implication provided otherwise in the instrument creating or defining the duties and powers of a trustee, a trustee shall treat all property, tangible or intangible, received as a corporate distribution upon or with respect to shares of stock held in trust, including shares of the same class:

(1) As trust income to the extent that, in the judgment of the Trustee, such distribution would be regarded as income from an investment rather than a diminution of an income producing property, by men of prudence, discretion, and intelligence in the management of their own affairs; and in making this determination, the trustee may consider whether such distribution would be likely, of itself, to have the effect of reducing materially the future earning capacity and the future earnings of the corporation, whether such distribution would be likely, of itself, to have the effect of reducing materially the future income of the trust from the shares of stock upon or with respect to which such distribution shall be made (assuming that the trustee should continue to hold such shares of stock for an indefinite period), and any other circumstances and factors which the trustee may deem relevant and significant.

(2) As trust principal to the extent that, in the judgment of the trustee, such distribution is not determined to be trust income under provisions of paragraph (1) of this subsection.

(b) The provisions of this section shall apply to any corporate distributions received after July 1, 1959 on trust property in any trust existing on or created after July 1, 1959.

heavily on the absence of language to the effect that the trustee's discretion was to be exercised "notwithstanding local law respecting allocation." [8]

In our opinion, the statutory provision prescribed a sufficiently objective standard so that, if there were no discretionary powers granted in the instrument itself, the charitable deduction herein would be available under section 2055(a). The extent to which an affirmative grant of such powers broadens the discretion of a trustee beyond the statutory standard has expressly been left undecided by Delaware courts in opinions which clearly indicate a reluctance appreciably to extend the "prudent man" rule of the Delaware Code. See *State Tax Commissioner* v. *Stephenson*, 267 A. 2d 464 (Del. Super. 1970), affd. 275 A. 2d 566 (1971). We find it unnecessary to decide this question, because we are satisfied that, under the circumstances of this case, even if a broader grant of authority is involved, it does not sufficiently relax the "prudent man" rule so as to impart a subjective standard destructive of the deduction claimed herein. Any such relaxation would not create an uncertainty "appreciably greater than the general uncertainty that attends human affairs." See *Ithaca Trust Co.* v. *United States*, 279 U.S. 151, 154 (1929); *Estate of Lillie MacMunn Stewart*, 52 T.C. at 836. The "conclusive and binding" clause herein does not affect this conclusion. Compare *Greer* v. *United States*, *supra*, where the presence of a similar provision did not preclude a holding in favor of the taxpayer, with *Estate of Stewart* v. *Commissioner*, *supra*, where the absence of such a clause was not considered helpful to the taxpayer.

Finally, we must dispose of respondent's contention that in light of *Estate of Stewart* v. *Commissioner*, *supra*, and the fact that an appeal from our decision herein will lie to the Third Circuit, we are required by *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), to hold against the petitioner. We disagree. Not only do the facts herein differ significantly from those involved in *Stewart* but the law of a different State is involved. Nothing in *Golsen* requires us to speculate as to what the views of the Third Circuit as to Delaware law would be. Indeed, the Third Circuit has clearly indicated that its approach to the problem herein can vary depending upon its analysis of the applicable State law. Compare *Estate of Stewart* v. *Commissioner*, *supra*, with *Peoples Trust Co. of Bergen County* v. *United States*, *supra*, in which the court reached opposite results based on New York and New Jersey law.

---

[8] Cf. Note, 50 Yale L.J. 1467, 1473 (1941).

The claimed deduction should be allowed.[9]

Reviewed by the Court.

*Decision will be entered for the petitioners.*

HOYT, *J.*, dissents.

_____

RAUM, *J.*, dissenting: I agree that this case is distinguishable from *Stewart* in certain important respects. But the majority opinion is not content to let the matter rest there. Instead there is an obvious effort to rehabilitate our former decision *Stewart*, repeating some of the same arguments which in my judgment were properly rejected by the Third Circuit in its reversal. I think that the opinion of the Court of Appeals was sound, and I dissent from the majority here to the extent that it attempts to resuscitate our opinion in that case.

HOYT, QUEALY, and GOFFE, *JJ.*, agree with this dissent.

_____

QUEALY, *J.*, dissenting: Insofar as the opinion of the majority reaffirms the opinion of this Court in *Estate of Lillie MacMunn Stewart*, 52 T.C. 830 (1969), revd. 436 F. 2d 1281 (C.A. 3, 1971), I am unable to agree. I believe that the U.S. Court of Appeals for the Third Circuit correctly interpreted the law of the State of New York and the application of section 2055 in its opinion in *Stewart*.

In determining the deductibility of charitable remainders, the Supreme Court has clearly established the basic principle to be that there must be some assurance that the charity to which the bequest has been made will receive the bequest or a determinable part of it and that the possibility of an invasion of the corpus, not subject to a readily ascertainable standard, will result in the disqualification of a given charitable deduction. *Commissioner* v. *Sternberger's Estate*, 348 U.S. 187 (1955); *Henslee* v. *Union Planters Bank*, 335 U.S. 595 (1949); *Merchants Bank* v. *Commissioner*, 320 U.S. 256 (1943); and *Ithaca Trust Co.* v. *United States*, 279 U.S. 151 (1929). The most explicit statement of the principle is found in *Merchants Bank* v. *Commissioner*, *supra* at 261, where the Court stated:

For a deduction under § 303(a)(3) to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. Cf. *Humes* v. *United States*, 276 U.S. 487, 494.

_____

[9] We note that the problem presented in the instant case will not arise for estates subject to the Tax Reform Act of 1969, because secs. 201(d) and 201(e) of that Act require that the remainder interest be in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust or a pooled income fund in order to be eligible for a deduction under sec. 2055. See Pub. L. 91–172, 83 Stat. 487. See also sec. 201(g)(4) of the Tax Reform Act of 1969 for the general effective date rule and the exceptions thereto for purposes of applying the aforementioned changes.

Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. * * *

For the most part, the courts seem to agree that broad administrative powers granted to a trustee, while not so intended, may give rise to such uncertainty as to make it impossible to presently ascertain the value of the charitable remainder within the meaning of section 2055 (a) of the Internal Revenue Code as interpreted by section 20.2055-2, Estate Tax Regs.[1] In any given case, the result depends upon the trust law of the particular jurisdiction involved and the language of the particular trust instrument. Thus, in *Greer* v. *United States*, 448 F. 2d 937 (C.A. 4, 1971), after enumerating the more recent cases [2] involving the effect of administrative powers in the determination of deductibility of a charitable remainder, the court said:

None of the authorities sustaining the government's position holds that broad administrative powers always or never prevent the deduction; rather, the cases rely heavily on the trust law doctrines and practices of the particular states involved, as well as the language of the trust instrument under consideration, to determine if there is any real likelihood that the interests of the charitable remainderman can be invaded for the benefit of the life tenant. * * * The cases rejecting the government's position have also rested on the trust law doctrines and practices of the particular states involved as well as the language of the trust instrument under consideration although they have evidenced greater liberality in substaining some flexibility in the administration of the trust without disallowance of the charitable deduction. * * *

Similarly, in *Peoples Trust Co. of Bergen County* v. *United States*, 444 F. 2d 193 (C.A. 3, 1971), the U.S. Court of Appeals for the Third Circuit, in distinguishing its prior decision in the *Stewart* case, said:

Both the provisions of the trust instrument and the law of New Jersey present quite a different situation with respect to the trustee's powers than was presented in *Estate of Stewart* v. *Commissioner of Internal Revenue*, *supra*. Because there is not in this trust, as it would be construed in New Jersey, a power to divert the ascertainable corpus from its charitable purpose, Section 20.2055-2(b), the deduction should have been allowed. The judgment of the district court will be affirmed.

In *Estate of Lillie MacMunn Stewart*, *supra*, the Tax Court recognized that "in theory the trustee herein might use its discretionary

[1] This problem will not arise under the Tax Reform Act of 1969 because subsecs. (d), (e), and (g) of sec. 201 of that Act require that a trust pay a fixed percentage of the net fair market value of the trust assets or a fixed-dollar amount to the life beneficiaries before the charitable remainder can qualify for the deduction. Pub. L. 91–172, 83 Stat. 487, 560–565, codified in secs. 642(c)(5), 664, and 2055(e) of the Internal Revenue Code of 1954.

[2] In the recent past, a relatively large number of cases involving the problem of the effect of a trustee's administrative powers in the determination of the deductibility of a charitable remainder have been decided. These cases have been summarized by the majority, and it is therefore unnecessary to do so here.

powers to allocate to income amounts that might, as an a priori matter, be technically allocable to corpus, and thereby impair the charitable remainers." While we regarded the laws of New York with respect to administration of trusts as imposing some obligation on the trustee irrespective of the terms of the instrument itself, we found that such laws did not preclude the diversion to the life beneficiary of what otherwise might be regarded as corpus. However, under the facts in that case, we determined that "there was no more likelihood that the corporate trustee would or could, in light of New York law, utilize its discretionary powers as a substitute power of invasion for the benefit of the income beneficiaries than there would be in a situation where such provisions were not included in the governing instruments." On this basis, we concluded that "To hold otherwise would be to turn what are commonplace trust powers intended simply to provide administrative flexibility into a substantive grant of dispositive flexibility."

On appeal, the U.S. Court of Appeals for the Third Circuit disagreed. See *Estate of Stewart* v. *Commissioner, supra*. The court concluded that "the central issue with respect to powers of invasion," direct or indirect, "is 'not what the trustees [are] likely to do, but what they [have] the power to do,' and whether that power is limited by an ascertainable standard."

I agree with the Third Circuit's formulation of the problem with respect to powers of invasion in the context of section 2055, and I cannot accept the attempt by the majority in this case to revive the "likelihood of use" standard promulgated by this Court in *Stewart* and rejected by the Third Circuit. It is not for the courts to engage in speculation as to whether and how a trustee might exercise the administrative powers vested in him by the trust instrument. The fact that the trustee has such powers, standing alone, may present an element of uncertainty which renders a given charitable remainder not susceptible of ascertainment within the meaning of the law. Thus, in *Rand* v. *United States*, 445 F. 2d 1166 (C.A. 2, 1971), the U.S. Court of Appeals for the Second Circuit said:

> The crucial issue here is not whether the trustee would do something so severe as the above example; rather the question is simply whether the trustee has a number of powers so broad that at the time of the decedent's death we cannot ascertain with any reasonable degree of probability the value of the remainder.

In view of these considerations, the question presented for decision in any given case of the type presently before us is whether the law of the particular jurisdiction involved in the case establishes an overriding standard which effectively limits the discretion granted to the

trustees under the so-called administrative clauses of the trust instrument under consideration in the particular case and thereby cures the uncertainty inherent in such powers which would otherwise prevent the given charitable remainder from being presently ascertained as required by the law.

In reversing our decision in *Estate of Stewart*, the U.S. Court of Appeals for the Third Circuit held that New York law does not establish such a standard stating that:

state law will not provide any fixed and ascertainable standard of investment and management conduct for the trustee. Here the decedent's dispositive intent does not reveal any desire to favor the life tenants over the remaindermen, but decedent's administrative intent was to rely solely upon the trustee's judgment and discretion rather than upon the normal rules of state law governing the administration of trusts. * * * The doctrine of In re Talbot's Will, *supra*, and In re Estate of Lecompte, *supra* * * * does not provide the requisite ascertainable standard for amounts left to charity where the powers are so broad as here.

In a related context, the U.S. District Court for the Southern District of New York in the case of *Jacobs* v. *United States*, 334 F. Supp. 388 (S.D.N.Y. 1971), also held that New York law does not provide the "requisite standard" of "investment and management conduct for the trustee." In that case, the District Court was concerned with the possibility of an indirect invasion of an inter vivos trust corpus as opposed to the possibility of an indirect invasion of a testamentary trust corpus of the type we have before us in the instant case. The taxpayers in *Jacobs* v. *United States*, *supra*, contributed stock in a regulated investment trust to a trust. The remainder of the later trust was to pass to a charitable foundation, and the taxpayers claimed part of their contribution to that trust as a charitable deduction under section 170(a). The respondent denied the deduction on the basis that the powers granted the trustee in the trust instrument were so broad that the remainder interest which was to go to the charity was not presently ascertainable.

The court in *Jacobs* v. *United States*, *supra*, concluded that there was no material difference between a charitable remainder of an inter vivos trust and that of a testamentary trust; and, in deciding the issue before it, the court went on to apply the analysis of the Supreme Court decisions and the decisions of other courts involving charitable remainders of testamentary trusts. With respect to New York law, the court in *Jacobs* v. *United States*, *supra*, concluded:

In my view, plaintiffs are incorrect in urging that New York law provides the requisite standard to ascertain the extent to which corpus will be depleted in this case. * * * While a court of equity may have power to stop a trustee from acting in such a way as to deplete or consume a corpus, thus providing a fixed standard at one end of the spectrum, such power does not provide a reliably

predictable standard to solve the problem presented in this case—i.e. where along the continuum leading to depletion equitable action can and should occur. In the present case, the trust instrument grants the trustee broad administrative powers. Article II(c), for example, allows the trustee to invest in wasting assets and gives him wide latitude as to assets in which he can reinvest. Article III(g) allows the trustee to charge trust expenses against principal. More important, Article IA requires the trustee to pay the net income quarterly to the life tenant, and Article IV allocates cash dividends, including capital gains dividends, to income. * * * With these and other broad powers given to him to deal with the trust *res* * * * the trustee here could in good faith carry out recognized fiduciary duties under New York law, yet still invade corpus * * * to an immeasurable extent, thus rendering impossible present valuation of the remainder interest. While plaintiffs have cited many cases holding that a court of equity will prevent a trustee from effecting a substantial diminution or depletion of the remainderman's interest, such cases do not provide a fixed standard, accurately calculable, by which we can ascertain the value of charitable remainder in this case. See, e.g., In re Gould's Will, 17 A.D. 2d 401, 234 N.Y.S. 2d 825, 828 (3d Dept., 1962) ("The yardstick for determining the duties of trustees is governed by the rule of the 'prudent man'.") ; In re Dickson's Estate, 38 Misc. 2d 678, 237 N.Y.S. 2d 572, 576 (1963) ("* * * for the best interests of all persons interested in the estate."). The standards imposed upon the trustee in the present case by New York law do not conform to the rules laid down by the Supreme Court for determining whether or not a remainderman's interest is presently ascertainable. * * *

I believe that the interpretation of New York law promulgated by the Court of Appeals in *Estate of Stewart*, and the District Court in *Jacobs* v. *United States*, *supra*, is correct. I also cannot find anything in the law of Delaware which in the instant case would lead me to a conclusion different from that reached by the Court of Appeals in *Stewart* and the District Court in *Jacobs* under New York law. Therefore, I cannot accept the attempt by the majority in the case now before us to reaffirm what I consider to be the clearly erroneous view of New York law established by this Court in its opinion in *Stewart*, and I must disagree with the interpretation of Delaware law herein accepted by the majority.